## HEAD v. PORTER.

*(Circuit Court, D. Massachusetts. December 3, 1891.)*

FEDERAL COURTS—JURISDICTION—INFRINGEMENT OF PATENT—SUIT AGAINST FEDERAL OFFICER.

An officer of the United States, in charge of a government armory, may be sued in the circuit court for infringement of a patent, notwithstanding that all his acts in relation thereto have been performed under the orders of the government.

In Equity. Suit by Charles Head, as administrator of William S. Smoot, against Samuel W. Porter, master armorer at the Springfield armory, for infringement of a patent. Heard on plea to the jurisdiction. Plea overruled.

*William A. Hayes, 2d,* for complainant.

*Frank D. Allen,* U. S. Atty., for defendant.

COLT, J. The plea in this case raises the single question of jurisdiction. The suit was originally brought by William S. Smoot, the complainant's intestate, against James G. Benton, an officer of the United States army in command of the national armory at Springfield, Mass., charging him with infringement of two patents, dated, respectively, January 1, 1867, and August 27, 1867, for improvements in cartridge retractors for breech-loading fire-arms. Subsequently the defendant died, and thereupon the complainant moved to amend his bill by substituting the present defendant, Porter, master armorer at the Springfield armory. The amendment was allowed, reserving the right of the defendant to object. The defendant appeared, and without objections filed an answer in the case. The United States attorney, on behalf of Porter, urges this circumstance as tending to show that this suit is in substance, though not in form, against the United States, but I fail to see the force of this argument. The complainant, on the death of Benton, might have proceeded against his representatives; but he chose to sue the present defendant, who consents to be substituted for Benton. The suit, therefore, stands as if originally brought against Porter.

The defendant admits that since the date of the patents, and before the filing of the bill, he has superintended, and still superintends, the making of breech-loading fire-arms, at the Springfield armory, as the master armorer, but he alleges that all his acts in relation thereto have been done in obedience to specific orders from the secretary of war, and his superior officers, directing the construction thereof, and in no other way; in other words, his defense is that he has acted only as the agent of the government, and under its authority. The subject-matter of this suit is a patent issued by the United States, and it became important at the outset to determine the nature of this grant. It has been authoritatively declared by the supreme court that the right of a patentee under letters patent was exclusive of the United States, and that it stands on the same footing as other property. *James* v. *Campbell,* 104 U. S. 356; *Hollister* v. *Manufacturing Co.,* 113 U. S. 59, 5 Sup. Ct. Rep. 717. As-

suming the allegations of the bill to be true, this is a suit where the property rights of an individual have been invaded by an officer or agent of the United States, acting under its direction, and the question is whether this court has jurisdiction in such a suit.

In cases where this general subject has come before the supreme court, the proposition is admitted that the United States, as the sovereign power, cannot be sued without its consent. I need only cite on this point, *U. S.* v. *Lee*, 106 U. S. 196, 1 Sup. Ct. Rep. 240. But it is not to be inferred from this that this court has not jurisdiction in an action where an officer or agent of the United States is sued for property in his possession as such officer or agent, or for injury to the person or property of another, where the defense is that he acted under the orders of the government.

In *U. S.* v. *Peters*, 5 Cranch, 115, the United States district court of Pennsylvania, in an admiralty proceeding, decided that the libelants were entitled to the proceeds of the sale of a vessel condemned as prize of war, which had come into the hands of David Rittenhouse as treasurer of Pennsylvania. The district judge declined to enforce the decree against the representatives of Rittenhouse, on the ground that the funds were held as the property of that state, and that as she could not be subjected to judicial process, neither could the officer who held the money in her right. An application for a writ of *mandamus* to compel the district judge to enforce the decree was granted.·

In *Meigs* v. *M'Clung's Lessee*, 9 Cranch, 11, the suit was for land on which the United States had a garrison, and had erected a fort. The defendants were military officers in possession, and they insisted that no action could be brought against them because the land was occupied by the United States for the benefit of the United States, and by their direction. The court held that, the title being in the plaintiff, he might sustain his action.

*Wilcox* v. *Jackson*, 13 Pet. 498, was a suit against officers of the United States to recover possession of land which had been in the possession of the government for over 30 years. The court do not consider the question whether such an action could be maintained, but proceed to decide the question of the plaintiff's title.

In *Osborn* v. *Bank*, 9 Wheat. 738, the state of Ohio had levied a tax upon a branch of the bank located in Ohio. The sum of one hundred thousand dollars was seized by Osborn, the auditor of the state, and delivered to the treasurer of the state. In a suit by the bank, both were made parties defendant. Objections were raised to the jurisdiction of the court, on the ground that the state of Ohio was the real party in interest, that the parties defendant were her officers, and that they were sued for acts done in their official capacity, and in obedience to her laws. These objections were overruled. Chief Justice MARSHALL says, on page 842:

"If the state of Ohio could have been made a party defendant, it can scarcely be denied that this would be a strong case for an injunction. The objection is that, as the real party cannot be brought before the court, a suit cannot be sustained against the agents of that party; and cases have been

cited to show that a court of chancery will not make a decree, unless all those who are substantially interested be made parties to the suit. This is certainly true where it is in the power of the plaintiff to make them parties; but if the person who is the real principal, the person who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong which they would afford against him could his principal be joined in the suit."

Again, he says:

"The process is substantially, though not in form, against the state, * * * and the direct interest of the state in the suit as brought is admitted; and, had it been in the power of the bank to make it a party, perhaps no decree ought to have been pronounced in the cause until the state was before the court. But this was not in the power of the bank. * * * A denial of jurisdiction forbids all inquiry into the nature of the case. * * * It asserts that the agents of a state, alleging the authority of a law void in itself, because repugnant to the constitution, may arrest the execution of any law in the United States."

*Grisar* v. *McDowell,* 6 Wall. 363, was an action to recover possession of land, brought against Gen. McDowell as an officer of the United States. The land had been reserved for military purposes by the government. The objection that this suit was brought against a military officer of the United States for property belonging to the United States, and set apart for public use, and that, therefore, it was substantially a suit against the government, was not passed upon by the court, but the court proceeded to determine the question of title as between the plaintiff and the government. *Brown* v. *Huger,* 21 How. 305, is a similar case.

In *Davis* v. *Gray,* 16 Wall. 203, the state of Texas having made a grant of alternate sections of land along which a railroad should thereafter be located, and the railroad having been located through it, a suit was brought against the governor of the state, and commissioner of the land-office, and they were enjoined from delivering patents of the sections of land which belonged to the railroad company. The objection to the jurisdiction of the court was disposed of on the authority of *Osborn* v. *Bank.* The court says:

"Where the state is concerned, the state should be made a party, if it could be done. That it cannot be done is a sufficient reason for the omission to do it, and the court may proceed to decree against the officers of the state in all respects as if the state were a party to the record. In deciding who are parties to the suit, the court will not look beyond the record. Making a state officer a party does not make the state a party, although her law may have prompted his action, and the state may stand behind him as the real party in interest. A state can be made a party only by shaping the bill expressly with that view, as where individuals or corporations are intended to be put in that relation to the case."

While this language is cited in support of the majority opinion of the court in *U. S.* v. *Lee,* Mr. Justice MILLER, in that case, says he is not prepared to admit that "the court can proceed against the officer in all respects as if the state were a party." And in *Cunningham* v. *Railroad Co.,* 109 U. S. 446, 3 Sup. Ct. Rep. 292, 609, the same eminent judge,

speaking for a majority of the court, declares that, while the action of court in *Davis* v. *Gray* has not been overruled, "it is clear that in enjoining the governor of the state in the performance of one of his executive functions, the case goes to the verge of sound doctrine, if not beyond it, and that the principle should be extended no further."

In the leading case of *U. S.* v. *Lee*, 106 U. S. 196, 1 Sup. Ct. Rep. 240, the action was ejectment to recover the possession of lands to which the plaintiff, Lee, claimed title. The defendants were in possession as officers of the government. The attorney general suggested to the court, without making the United States a party, that the property in controversy, known as "Arlington Cemetery," had been for more than 10 years, and now is, held, occupied, and possessed by the government, through its officers and agents, who are in the actual possession thereof as public property of the United States. To sustain this defense, the court held that it was necessary to show that the defendants were in possession under the United States, by virtue of some valid authority, and, the contrary appearing, judgment was awarded to the plaintiff. After reviewing the authorities, Mr. Justice MILLER says:

"This examination of the cases in this court establishes clearly this result: that the proposition that, when an individual is sued in regard to property which he holds as officer or agent of the United States, his possession cannot be disturbed when that fact is brought to the attention of the court, has been overruled and denied in every case where it has been necessary to decide it, and that in many others where the record shows that the case, as tried below, actually and clearly presented that defense, it was neither urged by counsel nor considered by the court here, though, if it had been a good defense, it would have avoided the necessity of a long inquiry into plaintiff's title, and of other perplexing questions, and have quickly disposed of the case."

Mr. Justice MILLER then proceeds to discuss certain expressions in the opinion of the court in *Carr* v. *U. S.*, 98 U. S. 433, and he says:

"As these remarks were not necessary to the decision of the point then in question, as the action was equally inconclusive against the United States, whether the persons sued were officers of the government or not, these remarks, if they have the meaning which counsel attribute to them, must rest for their weight as authority on the high character of the judge who delivered them, and not on that of the court which decided the case. That the United States are not bound by a judgment to which they are not parties, and that no officer of the government can, by defending a suit against private persons, conclude the United States by the judgment, was sufficient to decide that case, and was all that was decided."

Looking at the question upon principle, he continues:

"It seems to be opposed to all the principles upon which the rights of the citizen, when brought in collision with the acts of the government, must be determined, In such cases there is no safety for the citizen, except in the protection of the judicial tribunals, for rights which have been invaded by the officers of the government, professing to act in its name. * * * The position assumed here is that, however clear his rights, no remedy can be afforded to him when it is seen that his opponent is an officer of the United States, claiming to act under its authority; for, as Mr. Chief Justice MARSHALL says, to examine whether this authority is rightfully assumed is the

exercise of jurisdiction, and must lead to the decision of the merits of the question. \* \* \* The defense stands here solely upon the absolute immunity from judicial inquiry of every one who asserts authority from the executive branch of the government, however clear it may be made that the executive possessed no such power. Not only no such power is given, but it is absolutely prohibited, both to the executive and the legislative, to deprive any one of life, liberty, or property, without due process of law, or to take private property without just compensation." ·

*Poindexter* v. *Greenhow,* (one of the *Virginia Coupon Cases,*) 114 U. S. 270, 5 Sup. Ct. Rep. 903, 962, was an action of detinue for personal property distrained by the defendant as treasurer of the state of Virginia for delinquent taxes, in payment of which the plaintiff had tendered coupons cut from bonds issued by the state under the funding act of March 30, 1871. By the terms of that act, the coupons, after maturity, were receivable for all taxes and debts due the state. It was held that this created a contract between the coupon-holder and the state, and that any subsequent act of the state which forbids the receipt of these coupons is in violation of the contract, and void as against coupon-holders. Upon the question now under consideration, Mr. Justice MATTHEWS, speaking for the majority of the court, says:

"It is next objected that the suit of the plaintiff below could not be maintained, because it is substantially an action against the state of Virginia, to which it has not assented. It is said that the tax collector who is sued was an officer and agent of the state, engaged in collecting its revenue under a valid law. and that the tax he sought to collect from the plaintiff was lawfully due; that, consequently, he was guilty of no personal wrong, but acted only in an official capacity, representing the state, and, in refusing to receive the coupons tendered, simply obeyed the commands of his principal, whom he was lawfully bound to obey; and that, if any wrong has been done, it has been done by the state in refusing to perform its contract, and for that wrong the state is alone liable, but is exempted from suit by the eleventh article of amendment to the constitution of the United States."

The opinion then proceeds to answer these objections in the light of the adjudged cases in the supreme court, reliance being placed especially on *U. S.* v. *Lee* and *Osborn* v. *Bank.* In the course of this discussion it is said:

"A defendant sued as a wrong-doer, who seeks to substitute the state in his place, or to justify by the authority of the state, or to defend on the ground that the state has adopted his act and exonerated him, cannot rest on the bare assertion of his defense. He is bound to establish it. The state is a political corporate body, can act only through agents, and can command only by laws. It is necessary, therefore, for such a defendant, in order to complete his defense, to produce a law of the state which constitutes his commission as its agent, and a warrant for his act. This the defendant, in the present case, undertook to do. He relied on the act of January 26, 1882, requiring him to collect taxes in gold, silver, United States treasury notes, national bank currency, and nothing else, and thus forbidding his receipt of coupons in lieu of money. That, it is true, is a legislative act of the government of Virginia, but it is not a law of the state of Virginia. The state has passed no such law, for it cannot; and what it cannot do it certainly, in contemplation of law, has not done. The constitution of the United States, and its own contract, both irrepealable by any act on its part, are the law of Virginia; and that law

made it the duty of the defendant to receive the coupons tendered in payment of taxes, and declared every step to enforce the tax, thereafter taken, to be without warrant of law, and therefore a wrong. He stands, then, stripped of his official character, and, confessing a personal violation of the plaintiff's rights for which he must personally answer, he is without defense."

It was accordingly directed that judgment be rendered for the plaintiff.

In *Cunningham* v. *Railroad Co.*, 109 U. S. 446, 3 Sup. Ct. Rep. 292, 609, this general question was discussed, and the cases in which the court had taken jurisdiction, where the objection was interposed that the suit was substantially against the state, and that, therefore, the state was a necessary party, were examined and classified. The second class of cases is stated by Mr. Justice MILLER, as follows:

"Another class of cases is where an individual is sued in tort for some act injurious to another in regard to person or property, to which his defense is that he has acted under the orders of the government. In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defense he must show that his authority was sufficient in law to protect him. *Mitchell* v. *Harmony*, 13 How. 115; *Bates* v. *Clark*, 95 U. S. 204; *Meigs* v. *McClung*, 9 Cranch, 11; *Wilcox* v. *Jackson*, 13 Pet. 498; *Brown* v. *Huger*, 21 How. 305; *Grisar* v. *McDowell*, 6 Wall. 363; *U. S.* v. *Lee*, 106 U. S. 196, 1 Sup. Ct. Rep. 240."

This language is cited with approval in *Poindexter* v. *Greenhow*.

In reviewing the cases involving the general principle now under consideration, the fact should not escape observation that the judges of the supreme court have been much divided in opinion. The leading cases of *U. S.* v. *Lee* and the *Virginia Coupon Cases* were decided by a bare majority of the court, four of the judges dissenting in each case. But, notwithstanding this diversity of opinion, I think it is not going too far to say that the doctrine enunciated by Mr. Justice MILLER, under the second head of his classification in *Cunningham* v. *Railroad Co.*, has become the established law of the supreme court, and it is under this head the present case falls.

It cannot be said that the supreme court have authoritatively decided the identical question raised in this case, of the right of a patentee to maintain a suit in tort for the infringement of a patent-right against an individual whose defense is that all his acts in relation thereto were done as an officer or agent of the government and in obedience to its orders.

*Cammeyer* v. *Newton*, 94 U. S. 225, was an action brought for the infringement of a patent, and one of the defenses set up was that the use, if any, which the defendant had made of the patented improvement, was done under the direction of the United States, and as its agent or officer. Mr. Justice CLIFFORD, speaking for the court, says on this point:

"Public employment is no defense to the employe for having converted the private property of another to the public use, without his consent and without just compensation."

After reference to the clause in the constitution which provides that private property shall not be taken for public use without just com-

pensation, and to the section of the patent act giving the patentee the exclusive right to make, use, and vend to others his invention or discovery for a certain term of years, he then proceeds:

"Agents of the public have no more right to take such private property than other individuals under that provision, as it contains no exception warranting any such invasion of the private rights of individuals. Conclusive support to that proposition is found in a recent decision of this court, in which it is held that the government cannot, after the patent is issued, make use of the improvement any more than a private individual, without license of the inventor or making him compensation. *U. S.* v. *Burns,* 12 Wall. 246."

The question of infringement is then considered, and determined against the patentee. This opinion does not discuss the objection which has been raised in this class of cases to the jurisdiction of the court, and in view of the subsequent expressions of the court in *James* v. *Campbell,* 104 U. S. 356, and *Hollister* v. *Manufacturing Co.,* 113 U. S. 59, 5 Sup. Ct. Rep. 717, it can hardly be deemed conclusive of the question.

*James* v. *Campbell* was a suit brought upon a patent against James, a public officer, to respond for the use of the patented machine. The circuit court rendered a decree in favor of the complainant. *Campbell* v. *James,* 17 Blatchf. 42. After admitting the exclusive right of the patentee in the invention, which the government itself cannot use without just compensation, unless by consent, the opinion then proceeds:

"But the mode of obtaining compensation from the United States for the use of an invention, where such use has not been by the consent of the patentee, has never been specifically provided for by any statute. The most proper forum for such a claim is the court of claims, if that court has the requisite jurisdiction. As its jurisdiction does not extend to torts, there might be some difficulty, as the law now stands, in prosecuting in that court a claim for the unauthorized use of a patented invention; although where the tort is waived, and the claim is placed upon the footing of an implied contract, we understand that the court has, in several recent instances, entertained the jurisdiction. * * * If the jurisdiction of the court of claims should not be finally sustained, the only remedy against the United States, until congress enlarges the jurisdiction of that court, would be to apply to congress itself. The course adopted in the present case, of instituting an action against a public officer, who acts only for and in behalf of the government, is open to serious objections. We doubt very much whether such an action can be sustained. It is substantially a suit against the United States itself, which cannot be maintained under the guise of a suit against its officers and agents, except in the manner provided by law. We have heretofore expressed our views on this subject in *Carr* v. *U. S.,* 98 U. S. 433, where a judgment in ejectment against a government agent was held to be no estoppel against the government itself. But, as the conclusion which we have reached in this case does not render it necessary to decide this question, we reserve our judgment upon it for a more fitting occasion."

The court then proceeds to discuss the patent, and to decide the case upon its merits against the patentee.

It is to be noticed that this case is prior to *U. S.* v. *Lee* and the *Virginia Coupon Cases;* also that the foregoing remarks of Mr. Justice BRADLEY concerning the jurisdiction of the court are based upon *Carr* v. *U. S.*

In *U. S.* v. *Lee*, the language of the court in *Carr* v. *U. S.* is commented upon, and it is said that the decision in that case did not properly extend to certain remarks of the court. It may also be observed that Mr. Justice BRADLEY was among those members of the court who dissented in *U. S.* v. *Lee*, and that he wrote the dissenting opinion in the *Virginia Coupon Cases.* The more recent case of *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717, was a suit to enjoin the infringement of a patent, and one of the defenses relied upon was that all the acts of the defendant complained of in the bill were done by him in the discharge of his duties as collector of internal revenue of the United States, and by direction of the commissioner of internal revenue, and that he had acted as collector by virtue of legal appointment by the president of the United States.

Mr. Justice MATTHEWS, speaking for the court, refers to the doubts expressed in *James* v. *Campbell* whether such a suit against public officers could be sustained, or whether a suit upon an implied promise of indemnity might not be prosecuted against the United States in the court of claims, and then says:

"If the right of the patentee was acknowledged, and, without his consent, an officer of the government, acting under legislative authority, made use of the invention in the discharge of his official duties, it would seem to be a clear case of the exercise of the right of eminent domain, upon which the law would imply a promise of compensation, an action on which would lie, within the jurisdiction of the court of claims, such as was entertained and sanctioned in the case of *U. S.* v. *Manufacturing Co.*, 112 U. S. 645, 5 Sup. Ct. Rep. 306. And it may be that, even if the exclusive right of the patentee were contested, such an action might be brought in that court, involving all questions relating to the validity of the patent; but, as we have concluded to dispose of the present appeal upon other grounds, it becomes unnecessary to decide the question arising upon this defense."

The opinion then proceeds to discuss the patent and to dispose of the case against the contention of the patentee.

It is at least doubtful whether the present action could be brought in the court of claims. In its present form it is an action in tort, and not upon any contract, express or implied, and, as was said by Mr. Justice BRADLEY in *James* v. *Campbell*, the jurisdiction of that court does not extend to torts. While the supreme court have declined to pass upon the question of jurisdiction in these cases, they have assumed jurisdiction and disposed of each case on its merits; in other words, no case can be found where the court has dismissed the suit for want of jurisdiction, and this would seem to be sufficient ground, in this case, to overrule the plea, and allow the case to be heard upon bill, answer, and proofs. If, however, the principle established in the cases we have reviewed, and the rule laid down by Mr. Justice MILLER in *Cunningham* v. *Railroad Co.*, are sound, it is difficult to see why the court has not jurisdiction in the present case. This is an action of tort for the infringement of a patent, brought against an individual, who is an officer or agent of the United States, and whose defense is that he acted under orders of the government. That this is no defense in actions of this general char-

acter has, as we have seen, been repeatedly held by the supreme court, and the objection interposed that these suits are substantially against the government, and that, therefore, it is a necessary party to enable the court to grant relief, has been many times urged without avail. The rights secured to a patentee under his grant from the government are a form of property, in the enjoyment of which he is entitled to protection against all trespassers, including the government. To deprive him of the full enjoyment of these rights by using his invention without his consent is to deprive him of his property without just compensation or due process of law, and therefore in conflict with those provisions of the constitution which secure this protection to the citizen. I am of opinion, therefore, that the plea in this case should be overruled.