## DASHIELL v. GROSVENOR et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

### No. 110.

1. PATENTS FOR INVENTIONS — RIGHT OF GOVERNMENT TO USE PATENTED DEVICE.

The consent of the owner of a patented device is not positively necessary in order to enable the United States to use the invention described in the letters patent, particularly in cases where it relates to the mode of construction of implements of warfare required by the government.

2. SAME—SUIT TO RESTRAIN INFRINGEMENT.

The patentee of an improvement in breech-loading cannon brought suit against an officer of the United States navy, connected with the bureau of ordnance and having charge of the manufacture of cannon at a navy yard, for an alleged infringement of his patent, praying, not only for an accounting and damages, but for an injunction restraining defendant and all persons acting under his authority from making the cannon alleged to infringe complainant's patent. *Held,* that the suit was, in substance, one to prevent the making of breech-loading cannon of a certain character at the navy yard, and that public policy and the rights of the government would not permit such a suit to be maintained. 62 Fed. 584, reversed.

3. EQUITY—BILL CHARGING FRAUD—DECREE ON OTHER GROUNDS.

A court of equity will not grant a decree on another ground, where the bill charges actual fraud as the ground for relief, and the fraud is not proven. 62 Fed. 584, reversed.

Appeal from the Circuit Court of the United States for the District of Maryland.

The court stated the case as follows:

This is an appeal from a decree rendered in the circuit court of the United States for the district of Maryland in the chancery cause of James B. M. Grosvenor and others against Robert B. Dashiell, by which it was adjudged that letters patent No. 425,584, granted to Samuel Seabury, dated April 15, 1890, for improvement in breech-loading cannon, are valid, and that the same have been infringed by Robert B. Dashiell; also, that said Seabury and his assigns recover from said defendant certain profits and damages, and that a perpetual injunction be issued. 62 Fed. 584.

It is claimed in the bill, which was filed on the 25th July, 1892, that Seabury was the inventor and patentee, and that he assigned certain interests in the letters patent to his co-complainants, who with him then owned the entire right and title to the invention; that the defendant, well knowing the premises, has wrongfully, unlawfully, and injuriously, with intent to derive profits therefrom, and to deprive complainants of the royalties to which they were entitled, conspired, combined, and confederated with William M. Folger and other persons, and infringed upon the rights of the owners of said patent, by making and using, and causing and authorizing others to make and use, a large number of breech-loading cannon. embodying the inventions described and claimed in and secured by said letters patent, without any authority from said owners so to do, whereby defendant has realized large profits, to the loss and injury of the patentee and his assignees; that at the time of the infringement charged the defendant was an officer of the United States navy, holding the rank of ensign, and was connected with the bureau of ordnance of the navy department, of which Commodore William M. Folger was then and still is in charge, having control and supervision of the manufacture thereof, un-

der the direction of said bureau, of cannon for the use of the navy of the United States, particularly at the United States navy yard at Washington, in the District of Columbia; that, shortly after said letters patent were issued to Seabury, he exhibited a model of the invention, together with drawings relating to the same, to said Commodore Folger, at his office in the navy department at Washington, his purpose being to procure a trial of the device mentioned, and, in case it proved successful, its adoption by the navy department, and that the said Folger requested him to furnish his said bureau with working drawings by which the department would be able to construct a breech-loading cannon embodying such invention, which Seabury proceeded to do, and delivered the same to Folger; that afterwards the defendant, making use of the information and drawings so provided, which it is charged were given him by Folger for that express purpose, undertook to construct and devise a design substantially the same as that so invented by Seabury, changing the form of certain parts so as to evade the charge of infringement; that defendant, in pursuance of this purpose, did contrive a design, and make drawings of the same, which he furnished to Folger, who thereupon, with the consent, co-operation, and aid of defendant, proceeded to construct and make trial of a breech-loading cannon in conformity with the design of defendant, embodying substantially the Seabury invention, with immaterial changes in the detail thereof, purposely designed to evade the charge of infringement, and intended to defraud Seabury and his assigns of their rights under the said letters patent; that, a test of the same proving successful by reason of the great merit of the Seabury invention embodied therein, a large number of breech-loading cannon were constructed at said Washington navy yard, according to such design, under the procurement of defendant, and with his consent, as the pretended inventor of the design, as well as in pursuance of the conspiracy, combination, and confederacy of said Folger with the defendant; that a large number of such cannon are now in process of construction at said navy yard, under such consent and authority, and in pursuance of such conspiracy and confederacy; that such infringement was conducted by defendant and Folger in a secret manner, and was intentionally kept from the knowledge of complainants until it reached such dimensions that concealment was no longer possible; that such acts worked a great fraud on Seabury and his assigns, as they were intended to do; and that defendant will continue to make and use, and cause others to make and use, breech-loading cannon under the invention secured by said letters patent, and thereby cause irreparable injury to plaintiffs, unless restrained by writ of injunction.

The prayer of the bill is that defendant may be compelled to account for and pay to plaintiffs the income and profits so unlawfully obtained, together with damages and costs, and that he be perpetually enjoined and restrained, as also his clerks, servants, employés, agents, attorneys, and all persons acting under his authority, from making and using, or causing to be made and used, breech-loading cannon embodying the Seabury invention, and for such further relief as may in the premises be just and proper.

The defendant answered, denying all the charges of fraud, and particularly the allegations as to the conspiracy and confederation with the chief of the bureau of ordnance of the navy department. He also denied that Seabury was the true, original, and first inventor of the improvement set forth in his letters patent. The answer admits that the defendant is a naval officer, connected with the bureau of ordnance, and that Commodore Folger is the chief of said bureau; that the defendant has been under the orders of such chief while he was engaged in the manufacture of the cannon alluded to in the bill; that in December, 1889, the defendant told Folger that he was designing a rapid-fire gun, and that he completed his plans and drawings for a model of the same in April, 1890; that in September, 1890, he was placed in charge of the "proving grounds," at Indian Head, in Maryland, where he has since been, but that he has had nothing to do with the manufacture or sale of the cannon alluded to, except to test them as to structural weakness, facility of operation, rapidity and precision of fire, and their efficiency and safety; that in August, 1890, he exhibited a model of his invention to Commodore Folger, who asked him to prepare working drawings for a four-inch rapid-fire gun, which he did, sending them to the bureau in September, 1890; that breech-loading cannon

have been constructed at the navy yard at Washington, embodying an invention patented to him on the 9th day of February, 1892, but that they were manufactured under the orders, supervision, and authority of Commodore Folger and the officers of said navy yard. Other matters are set forth in the answer, but will not be referred to, as, from our view of the case, they are immaterial.

A great number of witnesses were examined relative to the patents in controversy, to the state of the art to which they belong, and to the manufacturing of breech-loading cannon at the Washington navy yard, the contract relating to the use of defendant's invention, and the royalty to be paid him by the navy department for the right to use the same.

The case came on to be heard, and on the 19th day of July, 1894, a decree was entered in the court below (62 Fed. 584) adjudging the Seabury patent to be valid in law; that the defendant had infringed upon the same; that complainants recover of him the profits made by him on account of such infringement; that an account be stated, showing the number of breech-loading cannon made and caused by defendant to be made, embodying the invention described in the Seabury patent, and the gains and profits defendant had received from his infringement of the same, together with the damages complainants have sustained thereby; and that a perpetual injunction be issued against the defendant, restraining him, his agents, clerks, servants, and all persons claiming or holding under him, from making, using, or selling, or in any manner disposing of, or authorizing others to make, use, and sell, breech-loading cannon embracing the invention or improvements described in the Seabury patent. From this decree an appeal was prayed for and allowed, the petition for the appeal and the assignments of error being filed and prosecuted by counsel acting under an order of appointment and instructions from the attorney general of the United States, as well as by counsel for defendant below.

S. F. Phillips (of Phillips & McKenney), Special Asst. U. S. Atty., William H. Stayton, and F. D. McKenney, for appellant.

William A. Jenner and William G. Wilson, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge (after stating the facts as above). We think that the pleadings and proofs of this cause clearly demonstrate that this is, in substance, if not in form, a proceeding, the object of which is to prevent the making of breech-loading cannon of a certain character, and by a particular device, at the navy yard of the United States in the city of Washington, District of Columbia, by those officially in charge thereof, representing the government of the United States; and, also, it is clearly shown that the injunction granted by the court below will in effect prohibit the officers so in charge of said navy yard from manufacturing such cannon for use on the vessels of war of the United States, as provided for under the provisions of existing legislation, the reason for such prohibition being that, in so making breech-loading cannon, said officers are infringing on the rights granted to Samuel Seabury by letters patent No. 425,584, dated April 15, 1890.

Should a suit instituted under such circumstances and with such intention be sustained? Do not public policy and the rights of the government in its sovereign capacity require that parties feeling themselves aggrieved on account of matters relating to such transactions as we have alluded to—to such circumstances as are set forth by the evidence taken and filed in this case—should be compelled to seek relief and compensation, if so entitled, by proceeding

in another manner, and before another tribunal, and that the courts should not use their writs of injunction so as to retard and embarrass the government in the prosecution of work, the product of which is absolutely essential to the public welfare and the national defense? We think that the consent of the owner of a patented device, while it is desirable, and should be obtained, if it conveniently and reasonably can, is not positively necessary in order to enable the United States to use the invention described in the letters patent, particularly in cases where it relates to the mode of construction of implements of warfare required by the government, and indispensable to the armament of its vessels of war. Such right to take and use the property of the citizen for government purposes is indisputable,—an inborn element of sovereign power essential to the independence and perpetuity of the nation.

The constitution of the United States provides that congress shall have the power to raise and support armies, and to provide and maintain a navy. By virtue thereof the congress has appropriated and caused to be expended large sums of money for such purposes, and for the manufacture of arms, the construction of ships of war, and the establishment of navy yards, including the one at Washington where the breech-loading cannon mentioned in complainants' bill have been and are now being manufactured. Under recent acts of congress, millions of dollars have been expended, through the navy department, in the purchase and manufacture of the armor plate and armament required for the ships of war lately constructed and now in process of building, and in the procurement and installation of the improved machinery for use in the breech-mechanism shop at said Washington navy yard for the purpose of constructing cannon of the character referred to in the bill. It is evident from the legislation by congress on this subject, and the action of the officials of the government thereunder, that it was and is the intention of the United States to cause to be manufactured, for national purposes, breech-loading cannon of the most approved and scientific design, utilizing such plans and inventions as would best secure the result desired, and making, in those cases where the right to use a patented device had not been secured, just compensation to the owner thereof, in the manner usual under such circumstances. After careful investigation, involving the examination of many designs, drawings, and innovations, with the aid of models and experiments, the chief of the bureau of ordnance formulated his plans, selected and adopted the devices and inventions he deemed best, and commenced the making of the breech-loading cannon, as he was authorized and directed by the congress to do, employing in connection with such work the defendant in this case. If the invention claimed by complainants is being used and infringed by those so representing the United States, then the owners of the same can recover just compensation for such use and infringement from the government by suit in the court of claims, or by means of an appropriation for that purpose made by congress, on application made to that body.

The fifth amendment to the constitution of the United States contains the provision that private property shall not be taken for public use without just compensation, and this we must consider as an implied assertion that on making such compensation it may be so taken. It will be noted that this is not a restriction of the power to take private property for public use, but that it is a requirement that when such property is so taken just compensation shall be made therefor to the owner. That incident of sovereignty —the right to take—belonging to every independent government is not disturbed, nor is the manner in which such right is to be exercised, or the mode by which the proper compensation is to be ascertained and paid, set forth. And because congress has provided by statutes a procedure for the condemnation of private property required for public purposes in certain instances, and not in others, we are not therefore to infer that the power to take does not exist as to the other matters; nor should we construe such legislation as a limitation of that power relative to other cases of like character not embraced in such enactments. In other words, the nonuser of a power is not to be used to disprove its existence.

The title the individual citizen has to his property is good as against all other citizens, but it must yield to the necessity of the government, and submit to the social requirements and rights of the general public; and this right of the government to protect itself and defend its own is not to be controlled by any other power, nor is it to depend on the consent of any person, company, or corporation. The only restriction, as we have already remarked, is the constitutional requirement that just compensation shall be made to the owner for property so taken. The proper mode of proceeding in order to secure compensation for private property taken for public use without the consent of the owner, and in the absence of legal action for condemnation, has received judicial consideration, the supreme court of the United States having at different times plainly indicated the same, particularly in cases where the government has used an invention without the permission of the owner of the letters patent protecting the same. Kohl v. U. S., 91 U. S. 367, 374; James v. Campbell, 104 U. S. 356; U. S. v. Great Falls Manuf'g Co., 112 U. S. 645, 656, 5 Sup. Ct. 306; Hollister v. Benedict & B. Manuf'g Co., 113 U. S. 59, 5 Sup. Ct. 717; U. S. v. Palmer, 128 U. S. 262, 9 Sup. Ct. 104; also, the following cases in the court of claims: Schillinger's Case, 24 Ct. Cl. 278, 298; Gill's Case, 25 Ct. Cl. 415; Berdan's Case, 26 Ct. Cl. 48.

We do not think that contending patentees, striving between themselves and those interested with them as to the validity of their respective letters patent, should be permitted to close the arsenals, ordnance shops, and navy yards of the United States by injunctions issuing out of their litigation, thereby frustrating the designs of the government, rendering inoperative the legislation of congress germane thereto, and causing great loss of the public funds appropriated by congress in execution of the same. It is true that the United States is not made a party to this action, but it is also

true that it is disclosed by the pleadings and evidence that the cannon, the further making of which it is the object of this suit to enjoin, are now being manufactured at the navy yard of the United States at Washington, by the employés of that establishment, under the direction of the chief of ordnance of the navy department; and it is apparent that such an observance of the injunction granted by the court below as should be shown by those to whom it is directed, and as must necessarily be required by the courts while it is of force and effect, will close said navy yard, so far at least as the manufacture of breech-loading cannon is concerned, and thereby prevent the enforcement of certain laws of the United States, the consummation of which is of national importance.

Independent of the questions we have been considering, there is another reason why, on the case as made in the record before us, the plaintiffs below are not entitled to a decree in their favor. Their bill of complaint, as drawn, rests upon the allegations of fraud contained therein, and it must stand or fall as the testimony establishes or fails to sustain such charges. The positive assertion of fraud permeates the entire bill,—it is the warp and woof of its structure,—depending on the combination, conspiracy, and confederation of the defendant and William M. Folger, as chief of the bureau of ordnance, to use the invention of Seabury, and deprive the patentee and his assignees of the benefits and royalties claimed to be secured to them by the letters patent referred to. A court of equity will not grant a decree on another ground, where the bill charges actual fraud as the ground of relief, and the fraud is not proven. We find that there is an utter failure to sustain the allegations of fraudulent conspiracy and confederation charged in the bill. It is shown that Commodore Folger, in his endeavor to secure the most useful and scientific plans and devices by which to construct the breech-loading cannon directed by the congress to be made, the manufacture of which was committed to him, did advise with the plaintiff Seabury, and did request of him his plans and drawings, and, also, that he did the same with the defendant, as well as with others; and, also, it is shown that Folger believed that the plans of the defendant were best adapted to the object desired to be secured by the government, and that he agreed to pay a certain sum for the use of the same, under the impression that the defendant was the inventor and patentee of the design so selected. But there was no intention to deprive the true owner of his right to demand and recover just compensation for the said taking and using, and it would not have availed had such intent existed, for the legal owner could have recovered, even though another had by mistake or fraud been paid.

The charges of fraud have been made either under an entire misconception of the facts or with a recklessness that, at least, is not commendable, and should not be encouraged by an endeavor on the part of this court to relieve the complainants of the embarrassment caused thereby by holding that they are entitled to a decree founded on some general ground of equity jurisdiction, not specially pleaded, but supposed to be included in the prayer for gen-

eral relief. While equity will always relieve those who suffer from acts of fraud, it has also always required that those who seek its jurisdiction on that account shall, after having carefully scrutinized the cause of complaint, most clearly formulate the allegations of the same, and then that they shall fully prove that which they have so alleged. We do not deem it essential to discuss this matter, elementary as it is in character, but we refer to the following cases, in which the subject is fully considered: Montesquieu v. Sandys, 18 Ves. 302; Price v. Berrington, 7 Eng. Law & Eq. 260, in which case Lord Truro says:

"When the bill sets up a case of actual fraud, and makes that the ground of the prayer for relief, the plaintiff is not entitled to a decree by establishing some one or more of the facts, quite independent of fraud, but which might of themselves create a case under a totally distinct head of equity from that which would be applicable to the case of fraud originally stated."

Wilde v. Gibson, 1 H. L. Cas. 620; Glasscott v. Lang, 2 Phil. Ch. 310; Curson v. Belworthy, 22 Eng. Law & Eq. 1; Tillinghast v. Champlin, 4 R. I. 173, in which case the court uses the following language:

"In almost all these cases it will be found that the objection to relief was not that the bill did not contain allegations sufficient to afford a basis for the inferior or secondary relief upon which the plaintiff wished to fall back, but that, having mingled with those allegations imputations of personal corruption or actual fraud, he had pointed his bill only to relief upon this higher ground, and must therefore succeed upon that ground, or not at all."

Fisher v. Boody, 1 Curt. 206, Fed. Cas. No. 4,814; Eyre v. Potter, 15 How. 42, in which the supreme court of the United States cite with approval the case of Price v. Berrington, supra.

The decree complained of will be reversed, and the case will be remanded, with instructions to dismiss the bill.