INTERNATIONAL POSTAL SUPPLY CO. OF NEW YORK v. BRUCE et al.

(Circuit Court, N. D. New York. March 27, 1902.)

PATENTS—INFRINGEMENT BY OFFICERS OF UNITED STATES — JURISDICTION TO GRANT RELIEF.

Complainant's bill alleged infringement of certain patents for improvements in machines designed for use in the post offices of the United States in canceling stamps and postmarking mail matter; that one of the defendants, who was a postmaster, was using in his office two infringing machines under leases from his codefendants; that such leases would expire in the near future, and that defendants were preparing to renew the same. It was also alleged that complainant had tendered to defendant postmaster, for use in his office on the same terms, two machines made under the patent, which had been refused. The bill prayed for the usual relief for infringement, and for an injunction against the renewal by defendants of the lease. The postmaster, who was the only defendant residing within the district, alone appeared, and filed a plea, alleging that he never personally used or caused to be used the alleged infringing machines, but that they were contracted for and placed in his office by the post office department, where they were used by his subordinates by order of such department, solely in the service and for the benefit of the United States; that the rental for such machines was paid by order of the department from government funds; and that he had no control over the leasing of the same, or the renewal of the leases therefor. *Held* that, while the court was of opinion, on principle, that it had jurisdiction, and that complainant was entitled to the remedy invoked, the question of jurisdiction was so far in doubt, in view of the decision of the supreme court in Belknap v. Schild, 16 Sup. Ct. 443, 161 U. S. 10, 40 L. Ed. 599, that the plea should be sustained.

In Equity. Suit for infringement of patents. On bill of complaint and plea.

The amended bill is in the ordinary form for the infringement of four letters patent for improvements in marking and stamping apparatus designed for use in the post offices of the United States, in canceling stamps and postmarking mail matter. The bill alleges that these post offices afford the sole and only market for the patented machines and that complainant is fully equipped and ready to supply all the machines needed to do the necessary work. The bill alleges further that two of the patents relied on have been sustained by the United States circuit court of appeals of the Second circuit and that as to the other two priority of invention was adjudged in favor of complainant's assignors after interference proceedings in the patent office. The bill alleges that the defendants are maintaining and operating daily, at Syracuse, N. Y., two stamp-canceling machines containing and embodying the improvements and inventions described and claimed in and by said several letters patents; and that the said defendant Dwight H. Bruce, acting as postmaster of the city of Syracuse, N. Y., is using, and permitting to be used, in the post office of said city of Syracuse, in the conduct of the business of said post office, the aforesaid two stamp-canceling and postmarking machines owned and maintained by the defendants Rice and the American Postal Machines Company, and is paying an annual rental of $110 per machine for the use of the aforesaid infringing stamp-canceling and postmarking machines to the defendants Rice and the American Postal Machines Company; that said defendants are acting conjointly and in concert in infringing said letters patents, and although notified of their aforesaid infringement and requested to desist and refrain therefrom they still continue the aforesaid infringement; that complainant has furnished to the defendant Dwight H. Bruce, a stamp-canceling machine made in accordance with the inventions and improvements described and claimed in said several letters patents; and in order that the facilities of the said Syracuse post office might not be impaired complainant has offered to and holds itself in readiness to supply additional stamp-canceling machines to take the place of the aforesaid infringing machines, and to do such other acts as may be necessary in the premises to save the public business of the Syracuse post office from inconvenience and enable the said defendant Dwight H. Bruce to conduct the affairs of the said post office without infringing complainant's patents in the conduct thereof, which said offer the said defendant Dwight H. Bruce has declined. The bill further states as follows: "That the said infringing machines used at the Syracuse post office are leased by the defendants Rice and the American Postal Machines Company, for the term of one year from June 30, 1901, for use in the Syracuse post office by the defendant Bruce as aforesaid, and that the lease or rental of said infringing machines will expire on June 30, 1902, and that the aforesaid defendants are jointly co-operating and making efforts to renew said lease or rental for another year from the 30th of June, 1902, and are endeavoring to and threatening to continue the use of the aforesaid infringing machines after the expiration of the said rental or lease on the 30th of June, 1902." The defendant Bruce, who is the only defendant residing in this district, and who alone appears, files an amended plea alleging "that he has never personally used or caused to be used any stamp-canceling and postmarking machines; that he is the postmaster of the United States post office at Syracuse, N. Y., where certain stamp-canceling and postmarking machines are used by some of his subordinates who are employés of the United States government, such use being entirely in the service and for the benefit of the United States; that such postmarking and stamp-canceling machines as are in use in said Syracuse post office were contracted for by the United States government through the post office department and were placed in the Syracuse post office, and used there, by order of said post office department; that the post office department hired said machines for the term of one year from June 30, 1901, which term is as yet unexpired; and that the rental of these machines is paid by order of said post office department out of funds appropriated for that purpose by the congress of the United States; that the renewal of said lease or rental, or the making of a new lease for another year from the 1st of July, 1902, is a matter which is wholly in the hands of the post office department and over which said defendant Bruce has no control; and de-

fendant avers that the question whether the use of the alleged infringing machines will be continued in the Syracuse post office after the 30th of June, 1902, is one which will be determined by the post office department in Washington." The defendant also contends that if the complainant is entitled to any remedy against him it is not by an action in equity but by a suit at law. The complainant has set the amended plea down for argument.

G. W. Hey, for complainant.

W. K. Richardson and Alex. D. Salinger, for defendant Bruce.

COXE, District Judge. The constitution says:

"The congress shall have power to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Article 1, § 8.

Under the power thus granted the congress has provided that any person who has invented "any new and useful art, machine, manufacture or composition of matter" and who complies with the law in other respects may "obtain a patent therefor."

Section 4884 of the Revised Statutes says:

"Every patent shall contain * * * a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States, and the territories thereof."

The theory of the plea is that this statute should be interpreted as though it contained a proviso as follows:

"Provided, however, that all officers of the government of the United States and their agents, servants and employés shall, when acting in their official capacity, at all times have the free use of such invention."

Although the defendant does not go so far as to assert that the complainant has no remedy whatever when its patent is used by government officers, this is the practical effect of his contention. If the plea to the jurisdiction be sustained all equitable remedies are denied to the patentee, his right to an injunction is gone and he is relegated to the court of claims to prosecute an inadequate remedy upon a questionable theory before a tribunal having doubtful jurisdiction. Prior to the decision in Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599, in February, 1896, the question presented by the plea, though often mooted, had never been decided adversely to the jurisdiction of the United States courts. The circuit courts had with great unanimity sustained their right to entertain these cases and the supreme court, though expressing doubt upon the subject, in at least two reported cases (James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901), had nevertheless assumed jurisdiction and dismissed the bills upon the merits. Mr. Walker summarizes the law as follows:

"Patent rights are exclusive, not only of citizens and residents of the United States, but also of the government itself, and of its agents. The government has no more right than any private citizen, to make, use, or sell a patented invention, without the license of the patentee. When the government grants letters patent for an invention, it confers upon the patentee an exclusive property therein, which cannot be appropriated or used by the government itself, without just compensation, any more than land which has been patented to a private purchaser can, without compensation, be appropriated or used by the government." Walk. Pat. § 157; 3 Rob. Pat. §

897; James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; U. S. v. Burns, 12 Wall. 246, 20 L. Ed. 388; Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901; Solomons v. U. S., 137 U. S. 348, 11 Sup. Ct. 88, 34 L. Ed. 667; Head v. Porter (C. C.) 48 Fed. 481.

In the latter case Judge Colt, after carefully considering all of the leading authorities, concludes as follows:

"It is at least doubtful whether the present action could be brought in the court of claims. In its present form it is an action in tort, and not upon any contract, express or implied, and, as was said by Mr. Justice Bradley in James v. Campbell, the jurisdiction of that court does not extend to torts. While the supreme court have declined to pass upon the question of jurisdiction in these cases, they have assumed jurisdiction and disposed of each case on its merits; in other words, no case can be found where the court has dismissed the suit for want of jurisdiction, and this would seem to be sufficient ground, in this case, to overrule the plea, and allow the case to be heard upon bill, answer, and proofs. If, however, the principle established in the cases we have reviewed, and the rule laid down by Mr. Justice Miller in Cunningham v. Railroad Co., are sound, it is difficult to see why the court has not jurisdiction in the present case. This is an action of tort for the infringement of a patent, brought against an individual, who is an officer or agent of the United States, and whose defense is that he acted under orders of the government. That this is no defense in actions of this general character has, as we have seen, been repeatedly held by the supreme court and the objections interposed that these suits are substantially against the government, and that, therefore, it is a necessary party to enable the court to grant relief, has been many times urged without avail. The rights secured to a patentee under his grant from the government are a form of property, in the enjoyment of which he is entitled to protection against all trespassers, including the government. To deprive him of the full enjoyment of these rights by using his invention without his consent is to deprive him of his property without just compensation or due process of law, and therefore in conflict with those provisions of the constitution which secure this protection to the citizen. I am of opinion, therefore, that the plea in this case should be overruled."

It is thought that this is a fair exegesis of the law at the time the opinion was filed, in December, 1891. This court is in accord with the views thus expressed.

It has always seemed to the court illogical, to use no harsher term, for the government to give to an inventor an exclusive right to his invention and thereupon proceed to render nugatory its own grant. The grantor of the right should, of all parties, be the last one to invade it. For the government to permit its own agents for its own benefit to violate its own covenant savors of bad faith. To use the language of Mr. Justice Harlan, in the dissenting opinion in Belknap v. Schild, if such evasion be permitted "the government may well be regarded as organized robbery so far as the rights of patentees are concerned." Of what avail is it that the patentee is informed that although his exclusive right can be trampled on with impunity he may yet resort to the court of claims for partial relief and failing there he may apply to congress? The right to use the invention is his and he should not be required to relinquish that right, in invitum, except in cases of public peril or necessity. Not only does good faith require that the government should respect its own patents, but good policy also demands it. To hold otherwise strikes at the foundation upon which our patent laws rest. It discourages that class of inventors who are devoting their energies to the improvements of appliances used in the great de-

partments of the government and upon which the progress and safety of the nation may depend in the future, as it has depended on more than one notable occasion in the past. Is it prudent to expect that the men of genius who have brought our engines of attack and defense to such a high state of perfection on sea and land will continue to work for a government which appropriates at will the fruits of their genius and labor? If the doctrine which forms the basis of this plea be once firmly established a patentee will be practically, though not theoretically, remediless against the encroachments of the officers of the government. What fundamental principle of law requires that the circuit courts should be ousted of a jurisdiction which they have so long maintained? Is it not safe to intrust to the judges of the United States courts the interests of the government, in all confidence that the writ of injunction will not be abused or issued in any case where the public interests are at all involved or are likely to suffer? A patentee has rights which are exclusive of the United States. The United States has no more right than an individual to use, without license, a patented invention. This proposition is no longer open to dispute and yet it is asserted that it is a right without a remedy and must so continue until congress provides a remedy. Conceding that the jurisdiction of the circuit court is not free from doubt should not every effort be made to sustain it until congress provides a tribunal which can grant adequate relief? That the court of claims is not such a tribunal is manifest. In any view its jurisdiction is limited to a recovery upon the theory of an implied contract and even this shred of remedy seems never to have been confirmed by the supreme court. It is true that the court of claims has taken cognizance of several cases which the supreme court has disposed of on the merits. Hubbell v. U. S., 179 U. S. 77, 21 Sup. Ct. 24, 45 L. Ed. 95; Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667. In only one instance was the jurisdiction under discussion and there it was upheld because the patentee had given his consent to the use of the invention and it was held that the claim was not one for infringement but a claim of compensation for an authorized use. U. S. v. Palmer, 128 U. S. 262, 9 Sup. Ct. 104, 32 L. Ed. 442. Mr. Justice Bradley, speaking for the court, says:

"It is objected that an action cannot be brought in the court of claims on a patent, the circuit court having exclusive jurisdiction of this subject. But whilst that objection may be available as to actions for infringement of a patent, in which its validity may be put in issue, and in which the peculiar defenses authorized by the patent laws in Rev. St. § 4920, may be set up, it is not valid as against actions founded on contracts for the use of patented inventions."

Upon principle and authority, therefore, the court would have little hesitation in overruling the plea were it not for the decision of the supreme court in Belknap and Schild. This decision is relied on by the defendant as a definitive determination of the questions in issue. The patent in that case was granted to Schild for an improvement in caisson gates. The caisson gate alleged to infringe was constructed by the United States and was in its possession and control at the dry dock in the navy yard at Mare Island. This dry dock was

used for naval purposes and the public defense in the building and repairing of ships for the navy of the United States. A plea was interposed alleging these facts and stating further "that the defendants, and each of them, never had anything to do with the construction, use or operation of the gate, or made any claim of right, title, possession, control or use of it other than as officers and agents of the United States, and in obedience to orders of the naval department of the government." The circuit court overruled this plea and the ruling was sustained, the supreme court using the following language:

"The fact so pleaded and suggested could not, consistently with the previous decisions, above cited. prevent the defendants from being held liable to the patentee for their own infringement of the patent. There was no error, therefore, in overruling the plea of the defendants and the suggestion of the attorney general."

As the plea set up the official character of the defendants it is urged that this ruling makes it incumbent upon this court to overrule the plea at bar, but in view of the opinion expressed in the latter part of the decision it is thought that the paragraph above quoted must have reference to some averments of the bill or plea not fully disclosed by the record. The court proceeds to point out that the caisson gate, though made in infringement of the patent, was nevertheless the property of the United States. Both the title and the possession vested in the United States. The opinion says:

"The entire interest adverse to the plaintiff was the interest of the United States in property of which the United States had both the title and the possession; the United States were the only real party, against whom alone in fact the relief was asked, and against whom the decree would effectively operate; the plaintiff sought to control the defendants in their official capacity, and in the exercise of their official functions, as representatives and agents of the United States, and thereby to defeat the use by the United States of property owned and used by the United States for the common defense and general welfare; and therefore the United States were an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought; and the suit could not be maintained without violating the principles affirmed in the long series of decisions of this court, above cited."

It was also decided that there could be no decree for profits awarded against the defendants and that whatever profits accrued inured to the benefit of the United States.

"The necessary result is," says the opinion, "that even if the validity of the patent and its infringement by the defendants are assumed, the plaintiff, upon this record, is not entitled to an injunction, to profits or to damages."

The points of difference upon the facts between that case and the case in hand are First: The machines at use in the Syracuse post office are not owned by the United States but are leased by the post office department for the term of one year. Second: The complainant is prepared to substitute other machines for the two infringing machines on similar terms so that the substitution can be effected without loss to the government or inconvenience to the public. Third: The quia timet feature of the present bill. Since the decision in Belknap and Schild the supreme court entertained jurisdiction of an equity suit for the infringement of a patent and affirmed a decree of the circuit court of appeals of the Fourth circuit dis-

missing the bill. Dashiell v. Grosvenor, 162 U. S. 425, 16 Sup. Ct. 805, 40 L. Ed. 1025. The action was in the ordinary form for the infringement of a patent for improvements in breach-loading cannon which were being made at the Washington navy yard. The circuit court, after a careful examination of the testimony, upheld the patent and directed an injunction to issue. Grosvenor v. Dashiell (C. C.) 62 Fed. 584. The circuit court of appeals reversed this judgment, holding that the circuit court was without jurisdiction and that the owners of the patent "can recover just compensation for such use and infringement from the government by a suit in the court of claims, or by means of an appropriation for that purpose made by congress, on application made to that body." Although it appeared that the manufacture of the cannon complained of was by the authority and direction of the defendant and under a contract with him by which he was to receive $125 for each cannon, the court of appeals decided that the suit was in substance and effect against the government and could not be maintained. The court also decided that complainant could not succeed for another reason to which it is unnecessary to refer. Dashiell v. Grosvenor, 13 C. C. A. 593, 66 Fed. 334, 27 L. R. A. 67. The supreme court does not discuss either of the propositions upon which the court of appeals bases its judgment, but affirms the decree dismissing the bill upon a ground not alluded to by the court of appeals, namely, that the patent was not infringed. The last sentence of the opinion is as follows:

"This conclusion also renders it unnecessary for us to consider the questions discussed by the court of appeals in its opinion, in respect to one of which see Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599; but for reasons stated, its decree dismissing the bill, is affirmed."

As infringement was specifically found by the circuit court and as this finding was not criticised in the court of appeals it may be argued with some plausibility that the supreme court would not have deemed it necessary to examine and decide the difficult question of infringement if satisfied with the reasoning of the court of appeals upon the jurisdictional question. The Belknap Case had just been decided, the subject was fresh in the minds of the justices, and there is some force in the suggestion that they would not have gone so far afield to find another reason for sustaining the judgment if clearly convinced that the reason assigned by the court of appeals was a valid one. In other words, may it not, perhaps, be inferred that the supreme court intends to confine the ruling in the Belknap Case to situations precisely similar to the one there shown, where the decree reversed contemplated the destruction of property of the government and the serious interference with the work of the navy of the United States? Some additional light is thrown on the discussion by the decision in November, 1898, of the circuit court of appeals of the Sixth circuit in Howell v. Miller, 33 C. C. A. 407, 91 Fed. 129. This was a copyright case, and especial interest attaches to the decision from the fact that the opinion was written by Mr. Justice Harlan who dissented in Belknap v. Schild. After commenting at some length upon the law as there enunciated the learned justice says:

"It thus appears that the supreme court, in Belknap v. Schild, proceeded in its judgment upon the ground that the caisson gate used at the navy yard of the United States under the supervision of the officers of the government, had become its property, and that such use could not be enjoined because an injunction could not operate directly upon the government's use of its own property, when it was not a party to the suit and could not, without its consent be sued. * * * It may be observed that if, before the caisson gate in question had been constructed, the patentee had applied for the relief necessary to prevent such construction, a different case would be presented to the supreme court."

The court has been unable to discover any decision since Howell and Miller which contributes anything of importance to the discussion. The situation is a most perplexing one. What to do!

After the most careful consideration it is thought that the wisest disposition of the controversy is to sustain the plea. The reasons which induce to this conclusion may be briefly stated as follows: First: It cannot be pretended that the question of jurisdiction is so far free from doubt as to warrant the court in granting a preliminary injunction. This being so it is probable that the question raised by the plea can be determined on appeal before the record would be ready for final hearing were the plea overruled. If the decree dismissing the bill be affirmed the parties will be saved the expense and annoyance incident to taking the proofs and printing the testimony. Second: The question is an important one and the controversy regarding it should certainly be set at rest. If it be presented on a bill and plea it must be decided and no better case can be selected in which to raise the naked question of jurisdiction. Should it be finally determined that the circuit courts can no longer entertain cases where government agents, acting under instructions from the executive departments, use devices covered by patents, a strong appeal may be made to congress to grant some adequate relief to this large class of inventors. Third: If the complainant could obtain relief upon the quia timet clauses of the bill the court would be inclined to retain jurisdiction, but as no one appears but the defendant Bruce and he, upon the admitted facts, has nothing whatever to do with the making or renewal of contracts it is not easy to see how an injunction against him will prevent the makers and owners of the machines from entering into renewal agreements with the post office department. The defendant Bruce is not a party to these agreements and has no interest in or control over them. In other words, the parties against whom such an injunction should be aimed are not parties to the action. Fourth: Although the facts differ in the particulars above stated from the facts in the Belknap Case the court cannot resist the conclusion that the attempt to distinguish the two cases is not grounded upon substantial considerations. The court cannot ignore the fact that the supreme court has said that the owner of a patent cannot enjoin officers of the government from using the invention in their official capacity; neither can he recover profits when the only profits shown are made by the United States. The plea states specifically that the defendant is using the invention in his official capacity and that no profits have accrued to him individually. These facts are all admitted. Fifth: This suit is not

the complainant's only remedy; it may yet obtain relief, at least so far as future infringements are concerned, by bringing an action against the other defendants in the proper district. The question of jurisdiction here discussed could not be raised in such an action.

The bill is dismissed.