# UNITED STATES v. PALMER.

## APPEAL FROM THE COURT OF CLAIMS.

No. 54. Submitted November 1, 1888. — Decided November 19, 1888.

The Court of Claims has jurisdiction over claims and demands of patentees of inventions for the use of their inventions by the United States with the consent of the patentees.

No opinion is expressed upon the question whether a patentee may waive an infringement of his patent by the government, and sue upon an implied contract.

THIS was a case from the Court of Claims. Its nature and object are fully explained by the following extract from the petition:

"Your petitioner is the inventor, patentee and owner of the improvements in infantry equipments, for which were granted letters-patent, Nos. 139,731 and 157,537, dated, respectively, June 10, 1873, and December 8, 1874. A board — consisting of Lieutenant-Colonels W. R. Shafter, A. McD. McCook, and Thomas C. English, Major Alexander Chambers, and Captain M. H. Stacey — was appointed by order of the Secretary of War, June 1, 1874, to meet at Fort Leavenworth, Kansas, July 1, 1874, or as soon thereafter as practicable, to consider and report upon the subject of a proper equipment for the infantry soldier, and to recommend the adoption of an equipment best suited to troops serving as infantry. Said board met at Fort Leavenworth, Kansas, July 1, 1874. On the 8th and 9th of July, 1874, the claimant exhibited and explained his said improvements to said board. On the 22d, 24th and 31st of August, and 16th, 18th and 30th of September, 1874, said board examined, considered and experimented with said improvements, and on the 12th of November, 1874, decided to recommend the same for adoption to the War Department. On the 24th of November, 1874, said board in their report to the chief of ordnance, recommended the adoption of said improvements by the government for the use of

the army of the United States. On the 26th of December, 1874, the General of the Army recommended the adoption of the same to the Secretary of War. And on the 4th day of January, 1875, said improvements were adopted by the Secretary of War as a part of the equipment of the infantry soldiers of the United States. . . .

"Since January 4, 1875, the defendants have manufactured or purchased for the use of the army large numbers of equipments, embracing a part or all of said improvements. The number of infantry equipments so manufactured or purchased is about 13,500; and the defendant, by reason of the premises, became indebted to your petitioner, on an implied contract, in the sum of $10,125, being a fair and reasonable royalty on the number of infantry equipments embodying your petitioner's inventions so manufactured and used, of seventy-five cents each. The cost of manufacturing said equipments is $5.59 each."

In its findings of fact the Court of Claims sustained the averments of the petition, except as to the extent to which the claimant's improvements were used in the army and the value of such use. As to the circumstances under and in pursuance of which those improvements were adopted, and on which the claimant founded the implied contract set up by him, the court in its second finding set out in full the report of the board of officers, made on the 24th of November, 1874, and referred to in the petition, in which were described the various equipments examined by them, and the reasons were stated why they preferred and recommended the adoption of the claimant's. The court then set out the recommendation of the General of the Army, in which he said: "The officers composing this board have had a large and wide experience, and their conclusions are entitled to weight. . . . The braces, knapsack, haversack and cartridge-box are all approved, and recommended for adoption." The order of the Secretary of War, directed to the Chief of Ordnance, is added, which simply declares that "the report of the board is approved as suggested by the General of the Army, with modifications recommended by him."

The court then found as follows :

"III. The pattern thus adopted involves the use of the claimant's invention, as set forth in claims 4 and 5 of letters-patent No. 139,731 and claims 1, 2, 3 and 4 of letters-patent No. 157,537.

"IV. This equipment was experimental, and had never been put to the test of actual use. It failed to give satisfaction to the army, and has been superseded by a return to the system in vogue during the war of the rebellion and anterior thereto. But this has been done informally, the order adopting the claimant's device never having been revoked, nor any other pattern adopted.

"V. No express agreement was made between the claimant and defendants' officers respecting a price to be paid for a license to manufacture infantry equipments or carrying-braces under the patents. Nor was there any agreement or understanding that the government's manufacture and user should be regarded as experimental until the device should be tested by general use in the army. The license under which the government manufactured and used the claimant's device, and the terms thereof, must be implied exclusively from the facts set forth in Finding II.

"VI. Since the 4th day of January, 1875, the Ordnance Department has manufactured 10,500 complete sets of infantry equipments of the pattern of 1874, and 2400 carrying-braces, in accordance with the specifications of the patents, but has issued for use in the army only 9027 complete sets of equipments.

"VII. The cost to the government of manufacturing such equipments was $5.59 per set, and a reasonable royalty for the right to manufacture and use amid the circumstances of the case as hereinbefore described would be the sum of 25 cents per set, amounting on the above quantity of 9027 sets to the sum of $2256.75."

Judgment was given in favor of the claimant for this sum.

*Mr. Assistant Attorney General Howard* for appellant.

I. The rights derived under patents are based upon the Con-

stitution and laws of the United States. Those laws having prescribed a remedy at law for their enforcement, that remedy is the exclusive one at law. This rule is peculiarly effective in its application to cases in the Court of Claims. Until a time long subsequent to the commencement of this suit the jurisdiction of that court was limited to claims founded upon any law of Congress, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the government of the United States, and claims referred to it by either House of Congress. With unimportant exceptions the jurisdictional act limits suits to obligations under contracts, express or implied. The language of the statutes excludes, by the strongest implication, demands made upon the government founded on torts. *Gibbons* v. *United States,* 8 Wall. 269, 275. The designation of the action on the case as the remedy, and of the special matters which may be set up as defences, in courts of the United States, is an exclusion of a resort to an action *ex contractu.*

The action on the case is not founded on a contract. The defences of fraud in obtaining a patent, and prior publication, and public use, and want of novelty, or originality, or usefulness, are scarcely adapted to the peculiar characteristics of an action based upon a promise to compensate for the use of an invention. Defences, whether the promise is expressed or implied, must be the same. We shall see hereafter most of the cases have been upon express contracts. They did not depend upon the construction of the law of patents. Jurisdiction was taken or denied without reference, except incidentally, to the patent. The rights of the parties depended altogether upon common-law and equity principles. They are not directly connected with the patent. *Wilson* v. *Sanford,* 10 How. 99 ; *United States* v. *Weld,* 127 U. S. 51.

The question is not whether the undisputed patentee shall be paid for the use of his property in an invention. It is whether the government, by a disabling fiction, shall be deprived of safeguards which it always had and which it has never surrendered. The whole history of the legislation relative to the organization and jurisdiction of the Court

of Claims shows the necessity of keeping up the common-law distinctions and attributes of actions. The subject-matter of all suits is claims. It may be reasonably doubted, to use the weakest phrase, whether an action can be supported in that court upon an implied promise springing from a tort.

It was not contemplated that jurisdiction should cover any cases except those of voluntary contracts entered into by authorized agents. The submission of the government to suit was not an acknowledgment of public frailty and liability to pecuniary punishment. It was rather that where contractual relations were fixed, the established rules of law should be applied to their determination, and the amount of compensation, either where it had or had not been expressed, decided. A long line of cases supports these views. *Smoot's Case*, 15 Wall. 36; *United States* v. *Clarke*, 8 Pet. 436, 444; *Cary* v. *Curtis*, 3 How. 236, 245; *Beers* v. *Arkansas*, 20 How. 527; *Gibbons* v. *United States*, 8 Wall. 269; *Perrin* v. *United States*, 12 Wall. 315; *United States* v. *Bostwick*, 94 U. S. 53; *Hart* v. *United States*, 95 U. S. 316; *Minturn* v. *United States*, 106 U. S. 437.

II. This question of whether assumpsit may be based upon an infringement of a patent has never been passed upon by this court. A brief review of the cases is proper. These may appropriately be considered, as to whether the action may be sustained at all, and whether it may be sustained in the Court of Claims. Reversing this order, we will first examine the Court of Claims cases.

*Pitcher's Case*, 1 C. Cl. 7, was an assumpsit for the profits realized by the government from the use by the warden of a penitentiary of patented machines for making brooms. The petition was demurred to on the ground of want of jurisdiction. The court treated this as an infringement for which a remedy had been provided.

*Burns's Case*, 4 C. Cl. 113, was an assumpsit upon a contract for license to use an invention and for compensation for use upon an implied promise. The decision was that the special contract was in force and the government liable under that. *Pitcher's Case* was distinguished. This court treated

the case as one upon the special contract, which was held to be in force, 12 Wall. 246.

*Shavor* v. *United States,* 4 C. Cl. 440, went off upon the question of fact that the promise was not made by the agents of the government.

*Hubbell's Case,* 5 C. Cl. 1, was brought under a special act of Congress, vesting jurisdiction to hear and determine whether Hubbell was the original inventor of the devices, and had a just and. equitable right to compensation, and what amount he was entitled to receive for the use of his inventions and for their transfer to the United States.

*Fletcher's Case,* 11 C. Cl. 748, was brought to recover for the use of self-cancelling revenue stamps. The court decided that the government did not use the stamp, nor contract with the patentee. In reply to the point of the petitioner that the invention was the property of the plaintiff before as well as after the invention, the court says: The petitioner had no exclusive rights in his invention till he had obtained his patent; and if any rights accruing to him have been infringed, the remedy is not within our jurisdiction.

*McKeever* v. *United States,* 14 C. Cl. 396. McKeever was an officer in the army, and presented to the same board before which the claimant in the case at bar appeared, patterns of a cartridge-box patented by him. The same course of examination, approval and use was had. McKeever brought his suit upon an implied promise for just remuneration for use. Among other defences it was strongly insisted, and ably argued, that there was no jurisdiction, but the court decided otherwise and proceeded to hearing and judgment. The former cases of Pitcher and Fletcher were not alluded to. The right was placed expressly upon an implied promise to pay for property which the defendant had used with the consent of the owner. Upon appeal to this court the case of McKeever was affirmed, but as no opinion was delivered or report made we have no means of knowing what points were raised or considered.

The question we are considering was elaborately considered in *Morse Arms Co.* v. *United States,* 16 C. Cl. 296–303, and the

doctrine of the *McKeever Case* adhered to and even extended. We respectfully submit that the cited cases do not warrant the conclusions arrived at when applied to the jurisdiction of the Court of Claims under its peculiar constitution and jurisdictional limitations. In the last case the following rule is laid down: "If the amount of the rent of the license is not stipulated and agreed, and it depends upon such reasonable worth of the use as may be proved, proof of invalidity of the patent is admissible to show failure of consideration either partial or entire;" citing *Jackson* v. *Allen*, 120 Mass. 64, 80; Gray, C. J.

III. But few cases of assumpsit have been instituted in courts of the United States based upon an infringement of a patent, although it has been intimated on several occasions that such might be maintained. See *Sayles* v. *Richmond, Fredericksburgh and Potomac Railroad*, 4 Ban. & Ard. Pat. Cas. 239, 245; *Packet Co.* v. *Sickles*, 19 Wall. 611, 614; *Langford* v. *United States*, 101 U. S. 341. See also *James* v. *Campbell*, 104 U. S. 356; *Hollister* v. *Benedict Manufacturing Co.*, 113 U. S. 59; *St. Paul Plough Works* v. *Starling*, 127 U. S. 376.

From the reasoning and authorities above, we deduce the following propositions:

First. The United States cannot be sued without their consent.

Second. The United States cannot be sued in any action for damages sounding in tort.

Third. Assumpsit upon an implied promise to compensate for use of a patented device or invention cannot be maintained against the government in the Court of Claims.

Fourth. A defence of any matter attacking the validity of a patent excludes the action from the jurisdiction of the Court of Claims.

Fifth. The Court of Claims had no jurisdiction to proceed to judgment in this cause.

*Mr. Halbert E. Paine* for appellee.

MR. JUSTICE BRADLEY, after stating the case as above reported, delivered the opinion of the court.

The principal objections raised on the part of the government against the judgment are, to the jurisdiction of the court and the form of the action. It is assumed that the ground of complaint on which the petition is founded is a tort and not a contract; that the assertion in the petition of an implied contract is not warranted by the facts of the case; and that the government cannot be sued in the Court of Claims for a mere tort.

This assumption of the appellant is erroneous. No tort was committed or claimed to have been committed. The government used the claimant's improvements with his consent; and, certainly, with the expectation on his part of receiving a reasonable compensation for the license. This is not a claim for an infringement, but a claim of compensation for an authorized use, — two things totally distinct in the law, as distinct as trespass on lands is from use and occupation under a lease. The first sentence in the original opinion of the court below strikes the key-note of the argument on this point. It is as follows: "The claimant in this case invited the government to adopt his patented infantry equipments, and the government did so. It is conceded on both sides that there was no infringement of the claimant's patent, and that whatever the government did was done with the consent of the patentee and under his implied license." We think that an implied contract for compensation fairly arose under the license to use, and the actual use, little or much, that ensued thereon. The objection, therefore, that this is an action for a tort falls to the ground.

It is objected that an action cannot be brought in the Court of Claims on a patent, the Circuit Court having exclusive jurisdiction of this subject. But whilst that objection may be available as to actions for infringement of a patent, in which its validity may be put in issue, and in which the peculiar defences authorized by the patent laws in Rev. Stat. § 4920 may be set up, it is not valid as against actions founded on contracts for the use of patented inventions. *United States* v. *Burns*, 12 Wall. 246; *Wilson* v. *Sanford*, 10 How. 99; *Hartell* v. *Tilghman*, 99 U. S. 547; *Albright* v. *Teas*, 106 U. S. 613; *Dale Tile Man'fg Co.* v. *Hyatt*, 125 U. S. 46. The case of *United*

*States* v. *Burns* was an appeal from a decree of the Court of Claims in favor of Burns for one-half of the license fee agreed upon for the use, by the government, of Major Sibley's patent tent, one-half of the patent having been assigned to Major Burns. Sibley joined the Confederates ; Burns remained true to his allegiance, and the Quartermaster General directed that he should be paid his half of the royalty. This payment being afterwards suspended, Burns filed a petition in the Court of Claims for the recovery of the amount due him. The court sustained the claim, although in a previous case, in which one Pitcher claimed damages against the government for the infringement of a patent, it had rejected the claim. In the case of Burns, that court said :

" It was also contended, on behalf of the United States, that this court had no jurisdiction of this case, because we cannot entertain a suit for the infringement of a patent ; and *Pitcher's Case*, 1 C. Cl. p. 7, was referred to. But this suit is not brought for the infringement of a patent, nor for the unauthorized use of a patented invention, but upon a special contract with a patentee, whereby the use of the invention by the United States was authorized and agreed to be paid for. *Pitcher's Case*, therefore, is not like this. In *Pitcher's Case* there was nothing but an unauthorized use by an officer of the United States, and where an officer of the United States, without authority from them, uses in their service a patented invention, the act being unlawful is his and not theirs, and he and not they are responsible for it." *Burns Case*, 4 C. Cl. 113. The point of jurisdiction does not seem to have been taken in this court ; but the jurisdiction of the Court of Claims was assumed.

It was at one time somewhat doubted whether the government might not be entitled to the use and benefit of every patented invention, by analogy to the English law which reserves this right to the crown. But that notion no longer exists. It was ignored in the case of Burns. The subject was afterwards adverted to in *James* v. *Campbell*, 104 U. S. 356, and the following observations in the opinion of the court in that case are so pertinent to the one in hand, that we deem it proper to reproduce them. We there said:

" That the government of the United States, when it grants letters-patent for a new invention or discovery in the arts, confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser, we have no doubt. The Constitution gives to Congress power 'to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries,' which could not be effected if the government had a reserved right to publish such writings or to use such inventions without the consent of the owner. Many inventions relate to subjects which can only be properly used by the government, such as explosive shells, rams and submarine batteries to be attached to armed vessels. If it could use such inventions without compensation, the inventors could get no return at all for their discoveries and experiments. It has been the general practice, when inventions have been made which are desirable for government use either for the government to purchase them from the inventors, and use them as secrets of the proper department; or, if a patent is granted, to pay the patentee a fair compensation for their use. The United States has no such prerogative as that which is claimed by the sovereigns of England, by which it can reserve to itself, either expressly or by implication, a superior dominion and use in that which it grants by letters-patent to those who entitle themselves to such grants. The government of the United States, as well as the citizen, is subject to the Constitution; and when it grants a patent the grantee is entitled to it as a matter of right, and does not receive it, as was originally supposed to be the case in England, as a matter of grace and favor.

" But the mode of obtaining compensation from the United States for the use of an invention, where such use has not been by the consent of the patentee, has never been specifically provided for by any statute. The most proper forum for such a claim is the Court of Claims, if that court has the

requisite jurisdiction. As its jurisdiction does not extend to torts, there might be some difficulty, as the law now stands, in prosecuting in that court a claim for the unauthorized use of a patented invention; although where the tort is waived and the claim is placed upon the footing of an implied contract, we understand that the court has in several recent instances entertained the jurisdiction. It is true it overruled such a claim on the original patent in this case, presented in 1867; but according to more recent holdings, it would probably now take cognizance of the case. The question of its jurisdiction has never been presented for the consideration of this court, and it would be premature for us to determine it now. If the jurisdiction of the Court of Claims should not be finally sustained, the only remedy against the United States, until Congress enlarges the jurisdiction of that court, would be to apply to Congress itself." pp. 357–360.

We have quoted these observations because, so far as they express an opinion on the subject, either of the right or the remedy, they are in general accord with our present views. And we add now, that in our judgment, the Court of Claims has jurisdiction to entertain claims and demands of the character presented in the present suit. Whether a patentee may waive an infringement of his patent by the government, and sue upon an implied contract, is a question on which we do not express an opinion.

As to the questions relating to the character and amount of use which the government had of the claimant's invention, and of the proper compensation due therefor, we do not see anything in the findings of the court below, or in its conclusions deduced therefrom, to call for serious observation. What evidence the court may have had on these points is not disclosed by the record, and should not be, and the facts found are sufficient to sustain the judgment.

*Judgment affirmed.*