## DICKERSON v. SHELDON.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

No. 1,181.

PATENTS—LIABILITY FOR INFRINGEMENT—PURCHASER OF ARTICLE FROM UNITED STATES.

The fact that an article which infringes a patent has been seized, condemned, and sold by officers of the United States in proceedings for violation of the customs laws does not vest the purchaser, who buys with knowledge that the article infringes the patent, with any right to vend it, as against the owner of the patent, nor in any way affect his liability for the infringement in case he does.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

George H. Petitt, U. S. Atty., for appellant.
Anthony Gref, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The complainant is the owner of United States letters patent No. 400,086, issued March 26, 1889, for the chemical compound or drug known as "Phenacetine." Defendant is the owner of several packages of the same compound, made in Germany, and which it is not disputed infringe complainant's patent. These he has offered for sale, insisting that he is entitled to sell them, in entire disregard of complainant's patent. The person or persons who brought these packages to this country undertook to smuggle them in without payment of the customs duty. They were detected, and the goods were seized, condemned, and sold, in conformity to the statutes of the United States. The defendant bought at such sale, knowing at the time that the goods infringed the patent.

The defendant's main contention appears to be that, by passing through the hands of the federal government, the infringing Phenacetine has been in some way freed from the operation of the letters patent; that the rights of the patentee, so far as they relate to this particular Phenacetine, have been abrogated by the action of the taxing officers. This proposition is wholly without support in any case cited on the brief. The citations enunciate merely the proposition, which no one here disputes, that all property rights are subject to the taxing power. The law as to patents infringed by government is thus stated by the supreme court:

"In England the grant of a patent for an invention is considered as simply an exercise of the royal prerogative, and not to be construed as precluding the crown from using the invention at its pleasure. * * * But in this country letters patent for inventions are not granted in the exercise of prerogative, or as a matter of favor, but under article 1, § 8, of the constitution, which gives congress power to 'promote the progress of science and useful arts, by securing, for limited terms, to authors and investors, the exclusive right to their respective writings and discoveries. The patent act provides that every patent shall contain a grant to the patentee, his heirs and assigns, for a certain term of years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States. Rev. St. § 4884. And this court has repeatedly and uniformly declared that the United States have no more right than any private person to use a patented invention without license of the patentee or making compensation to him." Belknap v. Schild, 161 U. S. 15, 16 Sup. Ct. 444, 40 L. Ed. 591, citing U. S. v. Burns, 12 Wall. 252, 20 L. Ed. 388; Cammeyer v. Newton, 94 U. S. 235, 24 L. Ed. 72; James v. Campbell, 104 U. S. 358, 26 L. Ed. 786; Hollister v. Manufacturing Co., 113 U. S. 67, 5 Sup. Ct. 717, 28 L. Ed. 901; U. S. v. Palmer, 128 U. S. 270, 9 Sup. Ct. 104, 32 L. Ed. 442.

The same court has held, in the same case, that the United States have not consented to be liable to suits, founded in tort, for wrongs done by their officers, though in the discharge of their official duties, and are therefore not liable to a suit for infringement of a patent; also that officers or agents of the United States, although acting under order of the United States, are personally liable to be sued for their own infringement of the patent; but that injunction should

not be granted, even in a suit against them, when the United States holds both the title and possession of the article, and is actually using it through such officers and agents; it being further intimated that, for such use of a patent,—practically an exercise of the right of eminent domain,—the proper forum in which to seek redress is the court of claims.   James v. Campbell, 104 U. S. 358, 26 L. Ed. 786.   But none of these propositions touch the case at bar.   Complainant is not suing the United States; nor have the United States either title or possession of the "thing made in infringement of the patent"; nor are they using it in any way; nor has any officer or agent of the United States been sued or enjoined; nor is any claim made against the United States for any infringement of the patent, by reason of its having, without license of the complainant, sold Phenacetine which infringed the patent.   There is nothing even for the court of claims to consider.   Nor is there any conflict, as defendant contends, between the patent laws and the revenue laws. The customs officers have made no effort to tax, condemn, or sell the complainant's property in the incorporeal franchise which he holds from the United States; nor is the patentee seeking, nor has he sought, to prevent the customs officers from taxing, condemning, or selling the corporeal property upon which the tariff act imposed duty as a chemical compound.

The defendant further contends that, by the condemnation proceedings, the statutory notice having been given, the absolute title to the property sold passed to the purchaser, freed from any lien, interest, incumbrance, or reservation.   This is correct as to the property sold.   All persons having title to it, or lien upon it, or interest in it, are cut off.   But the owner of the patent is in none of these categories.   He has no title to, or lien on, or legal or equitable interest in, the infringing property.   "The right of property in the physical substance, which is the fruit of the discovery, is altogether distinct from the right in the discovery itself."   Patterson v. Kentucky, 97 U. S. 506, 24 L. Ed. 1115.   "Title in the thing manufactured does not give the right to use the patented invention.   No more does the patent right in the invention give title in the thing made in violation of the patent."   Belknap v. Schild, 161 U. S. 24, 16 Sup. Ct. 448, 40 L. Ed. 591.

The suggestion in defendant's brief that complainant in some way participated in attempt to smuggle the packages is wholly without any evidence to support it.   The order of the circuit court is affirmed.