Edward J. DILLON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 61-349.

United States District Court
D. Oregon.

March 6, 1963.

Manley B. Strayer, Hart, Rockwood, Davies, Biggs & Strayer, Portland, Or., for plaintiff.

Sidney I. Lezak, Acting U. S. Atty., Portland, Or., for defendant.

EAST, District Judge.

In these civil proceedings, pursuant to Title 28 U.S.C.A. § 2255, in forma pauperis, the petitioner Dillon seeks to set aside and vacate "the plea of guilty and sentence" received and entered in the criminal case entitled United States of America v. Edward Joseph Dillon (Dillon) and Robert Newell Lovelace, No. C-18405, lately pending in this court.

Dillon contends in his pro per § 2255 petition that his conviction was obtained in violation of his United States Constitutional rights in that "(1) his plea of

guilty was obtained solely on the basis of Mr. Carney's promise that he would not receive a sentence in the excess of ten (10) years; (2) Mr. Carney had no intention of either recommending a sentence not exceeding (10) ten years or seeing that the court carried out the terms of his promise; and (3) Mr. Carney's demand that the petitioner request a presentence investigation report was merely an artifice to put before the court information which he knew would enhance the punishment."

We have just completed a complete hearing *de nova* on Dillon's petition, as directed by the Court of Appeals in Dillon v. United States of America, 307 F.2d 445 (9th Cir.1962). This court having heretofore, as directed by the Court of Appeals, appointed and requested Mr. Manley B. Strayer, of Portland, a member of the bar of this court, to act as counsel for Dillon in the matter of his petition before this court. Dillon was brought to the custody of the Marshal at Portland from the United States Penitentiary at McNeil Island, Washington, and has been available for consultation with Mr. Strayer for more than 10 days prior to the commencement of the hearing herein, throughout which Dillon and his counsel have been personally present. A more conscientious, intellectually honest, thorough and able legal representation of a petitioner's cause than afforded by Mr. Strayer has not been heretofore had in this court.

I find from the records and files of criminal case No. C-18504 and the evidence adduced at this hearing that:

On and for some time prior to January 3, 1958, the Federal Bureau of Investigation had been endeavoring to apprehend persons responsible for the armed robbery of three Portland-area member banks of the Federal Reserve System, one of which was the Foster-Powell Branch of the First National Bank of Portland;

On that date Dillon was in the custody of the Oregon State Police at Toledo, Oregon, in connection with purported charges of statutory rape against him.

That at the request of either himself or the state police, he was contacted by an agent of the F.B.I. Dillon then stated to that agent and the state prosecuting attorney, in effect—I want to make a deal —he could probably clear up a couple of pretty important federal cases—he would admit guilt in the federal cases, as he did not want to go to a state penitentiary on a rape charge, as he would be ostracized. He later, that day and after advising with his attorney, voluntarily gave a written statement to the F.B.I. agent, admitting and incriminating himself in the armed robbery of the Foster-Powell Branch;

On February 13, 1958, Dillon and Lovelace were jointly indicted and charged with the armed robbery of the Branch on December 13, 1957, in violation of Title 18 U.S.C. § 2113(a);

On March 21, 1958, Dillon and Lovelace were arraigned on the charges in open court and each entered a plea of guilty as charged, and on request of the government's counsel, with the consent of each of the defendants, a presentence report was ordered to be prepared for the court by the probation department of this District;

On May 8, 1958, defendants appeared with their respective counsel for sentencing. Dillon was sentenced to 18 years and Lovelace to 8 years imprisonment;

Since before the taking of Dillon's written statement at Toledo on January 3, 1958, and continuously throughout the entire disposition of criminal case No. 18504, Dillon was represented by his own retained, competent and able counsel, Mr. Jesse F. Webb;

Following the return of the indictment, Mr. Robert R. Carney, then first Assistant United States Attorney, represented the government throughout the criminal matter, and there followed a series of conferences with Mr. Webb and Mr. Eugene Pfeiffer, counsel for Lovelace, in the way of bargaining for assurances of recommendations by the United States Attorney's office as to lengths of sentences in return for Dillon's and Lovelace's pleas of guilty. Mr. Webb

and Dillon, in their testimony here, refer to these sought-for assurances as a "package deal," which phrase I use advisedly because the government needed the testimony of either Dillon or Lovelace to implicate the other;

Following the prior hearing herein, this court found, *inter alia*, that:

"8. The Assistant United States Attorney in charge of the criminal proceedings advised counsel for petitioner that in the event he was asked by the Court for a recommendation at the time of sentencing he would recommend a ten year term. No assurance or representation was made by the Assistant United States Attorney that a recommendation would be requested by the Court. There is no evidence that the Assistant United States Attorney or any representative of the United States Government at any time failed to make any recommendation as contended, and I further find that petitioner was advised by his attorney on three different occasions prior to his arraignment that there was no assurance that the Court would request the United States Attorney's recommendation or in any event that the Court was bound by any such recommendation." —;

During the immediate months of December, 1957, and January through March, 1958, the three resident judges of this District were alternating in the dealing with criminal arraignments and pleas as their respective time permitted, Chief Judge McColloch hearing relatively few, Judge Solomon considerably more, and Judge East probably the bulk;

It was the policy of the Chief Judge to occasionally ask for the United States Attorney's office and probation officer's recommendations as to sentences, and the practice of Judge Solomon was to also occasionally ask for the United States Attorney's office's recommendation, and almost always to discuss sentences with the probation officer, and that Judge East did not, as an announced policy, ask for recommendations from either the United States Attorney's office or the probation officers. There is no evidence in the record that Judge East ever refused to hear out or that he discouraged a proferred recommendation or suggestion as to sentences from any counsel or probation officers.

The personnel of both the United States Attorney's office and the probation office was at all pertinent times well cognizant of the practices and policies of the three judges in that regard—indeed, it would be a naive court which would hazard that the United States Attorney's office did not well know their judges;

At all critical times, Mr. Webb and Dillon and Mr. Pfeiffer well knew and were cognizant, through inquiry from fellow practitioners of this court bar, and particularly a former assistant United States Attorney, that it would be very unusual if any federal judge would ask for a recommendation by the United States Attorney as to sentencing, and there was very little possibility that any recommendation would be initially asked for by the sentencing judge;

Mr. Carney, during the development of the "package deal" and through the final understanding concerning a recommendation, did not know and had no reasonably foreseeable way of knowing in advance which judge would handle the arraignment of Dillon at ripening time;

Mr. Carney did convey and hold out to Mr. Webb and Dillon and Mr. Pfeiffer a willingness, in return for pleas of guilty "without guarantee, but if asked by the court to recommend sentences of 10 years for Dillon and 5 years for Lovelace;"

Mr. Webb advised with Dillon about the unlikelihood of a recommendation being asked for by the court and would not recommend to Dillon the entry of a plea of guilty, but rather to "sit tight";

Thereafter, through discussions, Messrs. Carney, Webb, Pfeiffer, Dillon and Lovelace understood that "the feeling" of the United States Attorney's office concerning the 10 and 5 year recommendations could be and would be,

through advice to the probation officer, reflected in the presentence report to the sentencing judge, and Dillon and his counsel relied (with some reservation, as Webb testified that Dillon asked, "Can we trust this guy?") On this arrangement of getting the proferred 10 and 5 year sentence recommendations to the sentencing judge, Dillon indicated his willingness to enter a guilty plea, and hence, arraignment ripened;

Mr. Burdett F. Emery, a probation officer for this District, was assigned to and did prepare a presentence report. Emery and Carney conferred over Dillon's and Lovelace's cases, as was universal probation office-United States Attorney's office practice, and Carney's 10 and 5 year recommendations, on the "if asked" basis, was discussed between them;

The ultimate written presentence report submitted did not reflect "the feeling" of the United States Attorney's office as to the proferred 10 and 5 year recommendations and contained no reference or advice whatsoever concerning prearraignment discussion or understandings among Messrs. Carney, Webb, Pfeiffer, Dillon and Lovelace, nor any recommendations concerning length of sentence by anyone;

No reason appears as to why the presentence report did not reflect the Carney-Emery discussion of the proferred recommendations or Mr. Carney's willingness in connection thereto, unless it be deference on the part of Mr. Emery to the recited announced policy of Judge East concerning initial requests for recommendations. To draw an inference of fraud and deceit or intentional withholding or cover-up of the Carney-Dillon understanding by Carney or Emery is preposterous;

In any event, I specifically find an utter and complete failure of proof of any deceit, deception, overreaching, unintended-to-be-kept inducing promises, or bad-faith withholdings on the part of "the prosecutor" throughout his handling of the "package deal" or in any of the matters of criminal case 18504 from its inception to date.

Now, as for conclusions I shall seek guidance from the teachings of United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (2nd Cir.1960), which case was heavily relied upon by the Ninth Circuit in Dillon v. United States. May I paraphrase Wilkins, at p. 712 of 281 F.2d— The primary thrust of the claim is that the prosecuting officials breached their promise to Dillon to recommend a sentence less than that which he received. As that court has noted in the past, such an allegation does not by itself rise to Constitutional stature, particularly when Dillon was represented by counsel, and is experienced in the ways of criminal courts, for Dillon must be supposed to know and be advised that such a promise is no way binding upon the court and ought not to affect Dillon's judgment in pleading. Not every promise by the prosecuting officer considered by a normal experienced person and his counsel in inducing a plea of guilty is, when unfulfilled, in and of itself ground for the claim that the prisoner's federal Constitutional rights have been violated.

I conclude that Dillon's plea of guilty was voluntarily given and entered by him and was not induced by any false promises, deceit, overreaching, trickery, or unfair means of any kind. It is apparent that Dillon drove the best bargain for "mitigation of punishment" that he could; that he could resolve several serious federal and state charges with one sentence, yet of undesignated years. The holding out of an arrangement of the getting the United States Attorney's 10 and 5 year presentence proferred recommendations to the attention of the sentencing judge timed the entry of Dillon's guilty plea, rather than coercing it, in violation of due process. Dillon's plea of guilty and his judgment of conviction thereon is not vulnerable to collateral attack under § 2255.

Rule 32, F.R.Crim.P. provides:
"Before imposing sentence the court shall afford the defendant an oppor-

tunity to make a statement in his own behalf and to present any information in mitigation of punishment."

It appears that at the time of sentence and after hearing Mr. Carney and Mr. Webb, neither of whom mentioned a word about the United States Attorney's proffered recommendations, and making some remarks itself about the state charge and Dillon's part in solving the three bank robberies in Portland, the court asked, "Do you have anything to say at this time, Dillon, why you should not be sentenced?" Dillon replied, "No, Your Honor, I do not have anything to say." Dillon was not asked nor did he request, that he be given an opportunity to "present information in mitigation."

The lack of any expression whatsoever by the court of having considered or even having knowledge of the United States Attorney's proffered 10 and 5 year sentence recommendations could not have helped but to bring utter dismay to Dillon and his counsel—if such a proffered recommendation had played such an important part in bringing about Dillon's plea of guilty.

Yet a logical reasonable basis for the silence of Dillon and his counsel would be the belief that the sentencing judge had knowledge of the recommendations through the presentence report, and therefore would have had to consider and deal with them. That being true, Dillon was unknowingly deprived of an opportunity of presenting "information in mitigation of punishment" which he then thought was being considered but, in fact, was not. This frame of mind assumes reality when viewed in light of Dillon's after-sentence action and contentions. Whether the 10 and 5 year sentence recommendations, if known by the sentencing court, would have netted a shorter period of imprisonment than given, is not for us to hazard. Suffice, the net result is that Dillon was deprived of an opportunity to present to the sentencing judge information which Dillon did consider highly probative to mitigation of punishment, all in violation of a

rule of "statutory command" status. See Brown v. United States, Court of Appeals for the Ninth Circuit, 314 F.2d 293 (1963).

Section 2255 tells us that "[i]f the court finds that * * * the sentence imposed was not authorized by law or otherwise open to collateral attack, * * * the court shall * * * resentence him or * * * correct the sentence as may appear appropriate. * * *"

The majority opinion in Hill v. United States, 368 U.S. 424, 426, 82 S.Ct. 468, 470, 7 L.Ed.2d 417, in dealing with a Rule 32(a) violation, stated:

> "We hold that the failure to follow the formal requirements of Rule 32 (a) is not of itself an error that can be raised by collateral attack, * *."

under § 2255. The opinion, 368 U.S. at page 429, 82 S.Ct. at 471, elaborates upon this bare holding:

> "It is to be noted that we are not dealing here with a case where the defendant was affirmatively denied an opportunity to speak during the hearing at which his sentence was imposed. Nor is it suggested that in imposing the sentence the District Judge was either misinformed *or uninformed as to any relevant circumstance.*" [Italics supplied.]

> "Whether § 2255 relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances is a question we therefore do not consider. We decide only that such collateral relief is not available when all that is shown is a failure to comply with the formal requirements of the Rule."

Thus, Hill left the door open, and I cross the threshold with the firm conviction that § 2255 relief is available to alleviate Dillon's Rule 32(a) violation, which occurred in the context of the aggravating circumstances that the district judge was "uninformed as to (a) relevant circumstance," i. e., the proffered United States Attorney's 10 and 5 year sentence recommendation.

I conclude that the commitment of Dillon for imprisonment for a period of 18 years should be set aside and that he should be committed to the custody of the United States Marshal for this District, awaiting a resentencing upon his judgment of conviction by the original sentencing court, in the manner provided by law.

I have endeavored to make findings on all issues suggested by the Court of Appeals, and this opinion shall stand as this court's findings and conclusions. However, either party may request additional specific findings.

Now, sitting in United States v. Dillon, No. C-18540, the consideration of resentencing is set for 1:30 p. m. Friday, March 8, 1963, with express leave to Dillon to then present any information in mitigation of punishment which he desires.