Edward J. DILLON, Plaintiff,

v.

UNITED STATES of America, Defendant.

In re STRAYER.

Civ. No. 61–349.

United States District Court D. Oregon.

June 22, 1964.

See also D.C., 218 F.Supp. 948.

Clifford N. Carlsen, Jr., Portland, Or., for Manley B. Strayer.

Sidney I. Lezak, Acting U. S. Atty. for Oregon, Portland, Or., for the United States.

EAST, District Judge.

In these Title 28 U.S.C.A. § 2255 proceedings, Edward J. Dillon (Dillon) sought to set aside his judgment of conviction and sentence of 18 years' imprisonment for armed bank robbery on a premise in the main that the United States Attorney had secured his plea of guilty to the crime upon a promise of a sentence of imprisonment not to exceed 10 years. The Court had at a prior time heard the same contention in a Rule 35, F.R.Crim.P. proceedings whereat Dillon was represented by counsel, resulting in a denial of relief. The Court again heard the contentions in these proceedings when Dillon (although at midhearing he had requested counsel), was not represented by counsel, and was again denied relief.

The Court of Appeals for the Ninth Circuit, 307 F.2d 445 (Aug. 22, 1962), reversed this Court's denial of relief in these proceedings, holding "* * * that it was clear error to refuse (Dillon, an indigent prisoner) request for a lawyer * * *" to prosecute the proceedings, and remanded the cause for consistent proceedings.

Thereafter, this Court, in proceedings held in open court [see Appendix A], declared that the remand was "* * * tantamount to a direct command to me to order a member of the bar of this court to represent Dillon throughout a rehearing of his § 2255 civil proceedings * * *"; and thereupon appointed Mr. Manley B. Strayer, an attorney of the highest standing and stature and extended experience at the bar of this court, and directed him to represent Dillon in Dillon's claims and contentions of a denial of his Constitutional rights, allegedly culminating in his unlawful conviction and sentence. Thereafter, the cause was reheard de novo, with Mr. Strayer acting throughout as attorney for Dillon (attorney), resulting in an order setting aside the original sentence but not the plea of guilty and conviction of Dillon, and a resentencing to a like term of imprisonment of 18 years, with full credit for time and allowances gained and accrued under the original sentence, and eligibility for parole.[1]

Thereafter, the attorney, upon the suggestion and invitation of this Court, petitioned for reasonable compensation for his services performed and expenses incurred as court-appointed counsel for the indigent Dillon, whereupon the Court ordered [see Appendix B]:

> "* * * that the Attorney General of the United States appear, by and through The Honorable Sidney I. Lezak, Acting United States Attorney for the District of Oregon, on or before 45 days from the date hereof, to show cause, if any there be, why judgment should not be entered against the United States and in favor of Manley B. Strayer for such

1. Dillon appealed again, and following a second remand by the Court of Appeals, Dillon has been resentenced a third time. However, this stage of a second appeal and remand thereunder is not now within our present sphere of inquiry and action.

amount as may be determined by the Court to be reasonable compensation and fees for his services and expenses performed and incurred as court-appointed counsel herein, * * *."

At the hearing, the attorney was granted leave to file herein his supplemental application and claim for just compensation in the amount of $5,000.00 for services and the amount of $24.50 expenses incurred.

The Court having received the testimony and evidence offered in support of the claim and considered the statements and advice of counsel, and now being advised in the premises, enters this memorandum of decision.

At the outset it must be made crystal clear that this Court is in no wise ignoring, outmoding or otherwise disparaging or relaxing the professional ethical obligation of attorneys admitted to the bar of this state and district to at all times freely give of their professional efforts, services, and time, without regard to cause or compensation, upon appropriate request of persons and the Court. The attorney and his able counsel in this phase of the proceedings, Mr. Clifford N. Carlsen, Jr., are acting in accordance with the highest traditions and ethics of the profession to give aid to this Court in dealing, as we are, with only the Constitutional rights of attorneys to be justly compensated in return for their professional expertise, service, time, and personal expense upon the direct order of the Court, in compliance with its duty to furnish and provide an indigent person due process in connection with criminal charges and conviction.

This is no time to quarrel over niceties of distinction as to whether these proceedings are civil or criminal in nature.[2] The simple fact is that Dillon was here seeking relief through Congressional streamlined proceedings from a judgment of conviction and sentence of imprisonment under the claim that the judgment was had and obtained through a denial of due process in the criminal proceedings and that he is an indigent person without funds to employ counsel of his own choosing.

While it may not have been so two short years ago, no one can now question the inescapable logical result that if an indigent person charged with serious crime is entitled as a matter of Constitutional right to counsel throughout trial prior to judgment of conviction, he must be likewise entitled to counsel as a matter of Constitutional right in obtaining judicial relief from an unconstitutional judgment of conviction by reason of a denial of due process occurring at the time he was entitled to trial counsel.

The attorney purely and simply asserts that his services, office, and out-of-pocket expense have been commandeered and taken by the government for a public use and claims just compensation therefor under the Fifth Amendment to the Constitution. The Attorney General advises that the Court has no authority to fix compensation and order the United States to pay such to the attorney for his legal services, and I would agree, only to the extent that as far as we are all

2. "'* * * an application under § 2255 is a new and independent civil proceeding for which the clerk of a district court must collect a docket fee or permission to proceed in forma pauperis must be granted.' (See Clerks Manual, Transmittal Sheet No. 10, May 5, 1960, issued by the Administrative Office of the United States Courts, requiring the clerks to charge a $15 filing fee on the filing of motions attacking sentences under § 2255).
"'* * * classification of the proceedings [(a) as a new and independent civil action, like a petition for habeas corpus, from (b) a step in the criminal proceedings, like a writ of error coram nobis] must be made for the guidance of litigants and court clerks.' Martin v. United States, 10 Cir., 1960, 273 F.2d 775, 777–778." Criticized in Brown v. United States, 186 F.Supp. 410, 411 n. 2 (D.Or. 1960).
The Court of Appeals (in Dillon) says, "Realistically a proceeding which may result in vacating a criminal judgment is, at least, not purely civil."

now advised, there is no present federal judicial pronouncement that this Court does have such authority. The Attorney General further advises the Court that only Congress can authorize and direct the expenditure of public money for the payment of compensation to the members of the bar called upon to represent indigent criminal defendants, and advises that Congress is now engaged in the process of providing for such authority and direction to the federal judiciary.[3] I do not understand that the United States district courts have no authority to order the United States to comply with the Fifth Amendment to the United States Constitution and pay just compensation for property taken for a public use merely because Congress has failed to provide Congressional direction and implementation for such payment; quite the contrary, I understand that *it is* for the United States district courts to decide, when presented with a claim for such, whether:

(a) There has been in fact a "taking" and whether

(b) The use of such taking is in fact a public use, regardless of whether the taking was pursuant to a declaration and implementation therefor by Congress. In support of this understanding as to the "taking," I refer to United States v. Finn, 127 F.Supp. 158, at p. 167 (S.D. Cal.1954); and Armstrong v. United States, 364 U.S. 40, pp. 48–49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). Finn cites Campbell v. United States, 266 U.S. 368, pp. 370–371, 45 S.Ct. 115, 69 L.Ed. 328 (1924), which I pinpoint only to place before us the jurisprudential thrust of that decision and of the decisions analyzed in support thereof. The thrust is simply this—where an officer of the army, acting under orders of the Secretary of War and without obtaining the owner's consent or instituting condemnation proceedings or making any compensation therefor, took possession of the owner's land, there arose an implied promise by the United States to compensate the owner of this loss, whereupon the owner became entitled to have the just compensation, as safeguarded by the Fifth Amendment. The decision analyzed is United States v. Lynah, 188 U.S. 445, 464, 465, 23 S.Ct. 349, 355, 47 L.Ed. 539 (1903), which advises us:

> "The rule deducible from *these cases* is that when the government appropriates property which it does not claim as its own, it does so under an implied contract that it will pay the value of the property it so appropriates. * * * The government may take personal or real property whenever its necessities, or the exigencies of the occasion, demand * * *, but the Constitution in the 5th Amendment guarantees that when this * * * right [of appropriation] is exercised it shall be attended by compensation."

Two of "these cases" referred to in Lynah—United States v. Palmer, 128 U. S. 262, 9 S.Ct. 104, 32 L.Ed. 442 (affirming Ct.Cl.1888); and United States v. Berdan Fire-Arms Mfg. Co., 156 U.S. 552, 15 S.Ct. 420, 39 L.Ed. 530 (affirming Ct.Cl.1895), are of specific interest to us. In each of these two cases, a patentee claimant recovered "reasonable compensation" under the implied-contract theory for the use of his invented improvements to infantry equipment which had been adopted by the Secretary of War without Congressional declaration of need or use, or other implementation or prior condemnation proceedings. This was, pure and simple, a judicial declaration, as distinguished from a Congressional declaration, of a taking for a public use in fact. We would do well to acknowledge the truism that a design or concept of a mechanical improvement to fire-arms and its work product or function, acquir-

3. And so it is and has been for the past quarter century, with no Congressional action. Furthermore, I am advised that the present Congressional proposals for government-paid compensation to counsel for indigent criminal defendants do not include provision for court-appointed counsel in the after-conviction or collateral proceedings such as these § 2255 proceedings.

ed by the appropriation and use of that design or concept, is the end result of the appropriation and use of the time, effort and expertise of the inventor.

In Armstrong, supra, the United States, through default remedies of a boat-building contract, acquired the title to certain naval boats, and by reason of the government's immunity to suit, materialmen's liens which had attached to the boats, under state law for the benefit of laborers and materialmen, were nullified and defeated. The Court (reversing the Court of Claims) allowed just compensation for the value of the liens so defeated for the reason that there had been, in fact, a taking of these liens from materialmen for which just compensation was due them under the Fifth Amendment (364 U.S. p. 48, 80 S.Ct. 1563). While it appears that the lien claimants in Armstrong were materialmen, it could hardly be suggested with reasonable logic that the result would have been otherwise had the liens been for the work product of laborers, rather than for materials supplied.

In support of the premise as to the office of a judicial declaration of a public use in fact, I quote Judge Mathes in Finn, supra, 127 F.Supp. p. 167:

> "It is for the courts to decide whether the use is in fact a public use, Shoemaker v. United States, 1893, 147 U.S. 282, 298, 13 S.Ct. 361, 37 L.Ed. 170, and the Supreme Court has just observed that 'The concept of the public welfare is broad and inclusive.' Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 102 [99 L.Ed. 27]."

Whether the attorney's claim is to be predicated upon the gray-area premise of an implied contract, or the black-and-white premise of a judicial implementation of the self-executing exigencies of the Fifth Amendment itself, this district court has jurisdiction to deal with the claim. Title 28 U.S.C.A. § 1346 provides, *inter alia:*

> "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
>
> * * * * * *
>
> "(2) Any * * * claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, * * * or upon any express or implied contract with the United States, * *."

Section 2402 of Title 28 provides, *inter alia:*

> "Any action against the United States under § 1346 shall be tried by the court without a jury. * * *"

excepting actions under 1346(a) (1).

As was the chore of the Court in Armstrong, our query now turns as to whether:

(1) The attorney's license to practice law before the bar of this Court, his time and expertise, his law-office help, facilities, and supplies, and his own out-of-pocket expense, are "compensable property interests within the meaning of the Fifth Amendment"; and whether

(2) This Court's order appointing and directing the attorney to serve under his license and give of his legal learning, enterprise, and astuteness and office facilities, with personal monetary expense in the legal representation of Dillon in these proceedings, constitutes

(a) A "taking" of such compensable property for

(b) A public use.

As to query (1) above, our answer comes quickly. If the work product of an inventor or a laborer claiming a lien be compensable property, so is the work product of a lawyer, and his office expenses and out-of-pocket money are such, per se.

As to query (2), we know from our eighth-grade civics that the power of eminent domain is an inherent essential attribute of sovereignty and is one of the prerogatives of the sovereign to aid it in the performance of its Constitutional or organic activities under the

premise and purpose that no one person or group or classification of persons should bear economic losses in the operation of government, but, on the contrary, such losses and expenses should be borne by all of the people equally and equitably. Armstrong, supra, 364 U.S. p. 49, 80 S.Ct. p. 1569, is a judicial (as distinguished from a Congressional) implementation of the "Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation." Armstrong is a classical expression of the simple fact and truth that the Fifth Amendment guarantee of the payment of just compensation "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."

It used to be thought by some that the attaining in the first instance and the continuation of the status as a member of the bar of a given court and a license thereunder, was a privilege at the discretion of that court, but no longer does that special-class myth obtain. It needs only to be stated that today, if one holds the prescribed qualifications, he must be admitted to practice before that court as a matter of right, and the attorney, having once acquired that license, can only be deprived of it through the judicial exercise of due process. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed. 2d 796 (1957); and Konigsberg v. State Bar, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed. 2d 810 (1957).

For a court to order a member of its bar to give of his services under his license and of his office facilities and money is no less an appropriation of services and property (by reason of the attorney's deference to the court), and is an usurpation, utilization, and necessarily a "taking" of those compensable property interests of the attorney as surely as is the wiping out of the materialmen's liens or the utilization of the inventor's product. Each hour and day of the commandeered and appropriated services of the attorney was a total and complete taking of the present value thereof, as well as a destruction of the value of that hour or day to the other demands and enterprises of the attorney. Time of the lawyer, utilizing his expertise and backed with his law-office tangible help and facilities, is his only salable asset.

A long time ago, it was declared:

> "The idea of one calling enjoying peculiar privileges, and therefore being more honorable than any other, is not congenial to our institutions. And that any class should be paid for their particular services in empty honors is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal rights." Webb v. Baird, 6 Ind. 13 (1854).

Moreover, since the Constitutional right to legal counsel now requires for the indigent legal "representation in the role of an advocate" through trial, appeal, and attack of judgment of conviction [Douglas v. California, 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811], no longer should the "some people" in the legal profession alone bear the burden of the cost and expense of the now-recognized organic obligation of the sovereign in connection with the administration of criminal law to furnish and supply legal representation for the indigent. This public burden "* * * in all fairness and justice, should be borne by the public as a whole."

The administration of criminal justice is an organic or Constitutional obligation of the sovereign United States, and all incidents thereto necessarily are facets of the public use and benefit. In fact, the prosecution of the guilty and the protection of the innocent is the keystone of American criminal justice. The protection of the public on one hand, and the interests of the convicted as an individual on the other, through all stages and phases of obtaining and keeping of only a lawful judgment of conviction and sentence, are the cross-currents of the

mainstream of a peaceful and tranquil society within our government—it is a public use and purpose of the sovereign—from inception of criminal charge to the end of sentence. The production of witnesses for an indigent defendant is a phase of due process—the supplying of a transcript of proceedings to an indigent defendant through the services, expertise and facilities of the court reporter is a phase of due process, as is the supplying of a mental or physical examination through the services and expertise of a physician, and so must also be a supplying of the license, time, expertise, office facilities and expense of an attorney for the indigent. The supplying of every need at every phase in obtaining and preserving lawful judgment of conviction and sentence and the disgoring of unlawful judgment of conviction and sentence through due process of law is a public use and purpose.

It necessarily follows that legal representation is a necessary facet of the government's public obligation of furnishing due process for Dillon in these proceedings, and the supplying of the same by the attorney was for a public use.

I conclude here, as did the Court in Armstrong, supra, that a "* * * fair interpretation of (the Fifth Amendment) protection entitles (Mr. Strayer) to just compensation here."

I find from the evidence that Mr. Strayer gave and performed a total of 108 hours of his professional licensed time, backed by his law-office help and facilities, and spent $24.54 of his own money in the performance of his appointment and direction by the Court to act as counsel for Dillon in these proceedings. Further, that in view of the fact that the substance and weight of the traffic of this cause falls within the realm of humanities rather than commerce, the sum of $35.00 per hour is reasonable and just compensation for the licensed services, backed by his law office, of Mr. Strayer, which, in commerce, would justify a much greater amount, and I conclude that Mr. Strayer is entitled to judgment, without costs, against the government for the aggregate sum of $3804.54 as just compensation, payable by the General Accounting Office, pursuant to Title 28 U.S.C.A. § 2414.

This memorandum of decision is adopted as this Court's findings of fact and conclusions of law herein, as provided by Rule 52(a) F.R.Civ.P., and the Clerk of this Court shall forthwith, upon the entry of this memorandum of decision, prepare, sign and enter judgment as herein indicated, without awaiting any further direction of this Court, pursuant to Rule 58, F.R.Civ.P.

## APPENDIX A

### PROCEEDINGS IN OPEN COURT

THE COURT:

Mr. Strayer,[1] Edward J. Dillon is now incarcerated at Alcatraz under this court's sentence of imprisonment for 18 years upon his plea of guilty to the offense of armed bank robbery. Dillon was represented by counsel throughout the proceedings leading up to and through his sentencing and subsequent unfruitful hearing for a modification of sentence under Rule 35, F.R.Crim.P. Thereafter, Dillon, proceeding pro. per. and in forma pauperis, filed a motion under § 2255 of Title 28 U.S.C.A. to set aside his conviction and sentence on the alleged grounds that he "decided to plead guilty on the basis of his understanding," growing out of "conferences had between the parties, their lawyers and the Assistant United States Attorney," "that he would receive a maximum sentence of ten years." A hearing was had and the motion was denied. The court called as witnesses everyone designated by Dillon; however, refused his requested for court-appointed counsel at the hearing.

1. Mr. Manley B. Strayer, of Hart, Rockwood, Davies, Biggs & Strayer, Portland, Oregon.

Dillon appealed, and the Court of Appeals [2] viewed the matter as one presenting "a subtle and difficult issue of fact" and thought that "Even judged by a lawyer's standards, the issue presented here was not uncomplicated. Moreover, its resolution required the development of evidence relating to the judge's practice and that of the probation officer, the knowledge and understanding of the principals, and what actually transpired at a series of conferences held over a period of six weeks or more involving possibly a dozen persons, most of whom were lawyers or officials." The Court of Appeals in reversing held "that it was clear error to refuse (Dillon's) request for a lawyer * * *" and remanded the cause for further proceedings. This is tantamount to a direct command to me to order a member of the bar of this court to represent Dillon throughout a rehearing of his § 2255 civil proceedings,[3] without any apparent right to compensation for services or reimbursement for actual expenses which will be incurred on behalf of Dillon.

In view of the Court of Appeals appraisal of the matter, I feel that I must designate an attorney with some considerable experience and with some means. The preparation for and the trial in this matter could consume a considerable period of time, and this court cannot be placed in the position of forcing a young attorney without means of support to undertake a matter of this nature which may be long and complicated. Some time ago we had the experience of appointing two young attorneys in a case, trial of which lasted close to six months. I understand those attorneys had to borrow money to support themselves during the course of the trial.

So, Mr. Strayer, knowing of your high standing and extended experience at the bar and the fact that you and your firm can stand the financial strain, I have called you to court this morning to appoint you counsel of record and direct you to represent Dillon in the matter of his motion in this court. The court now enters such an order. The clerk is directed to supply you with and to mail to the plaintiff at the United States Penitentiary at Alcatraz, a conformed copy of the order. The reporter is directed to furnish you with a transcript of these remarks.

We of this court feel that the modern day concept of an absolute right of review with free legal counsel accessory places an intolerable burden upon the legal profession and a remedy must be found. Mr. Henry P. Chandler, past Director of the Administrative Office of the United States Courts, not too long ago had occasion to say:

> "In fact the lack of provision for compensating counsel appointed to defend poor persons accused of crimes or even paying their out-of-pocket expenses has come to be regarded as the most serious defect in the federal judicial system."

2. Dillon v. United States, Court of Appeals for the Ninth Circuit, August 22, 1962, 307 F.2d 445.

3. "* * * it was later held that: "'* * * an application under § 2255 is a new and independent civil proceeding for which the clerk of a district court must collect a docket fee or permission to proceed in forma pauperis must be granted.' (See Clerks Manual, Transmittal Sheet No. 10, May 5, 1960, issued by the Administrative Office of the United States Courts, requiring the clerks to charge a $15 filing fee on the filing of motions attacking sentences under § 2255). "'* * * classification of the proceedings [(a) as a new and independent civil action, like a petition for habeas corpus, from (b) a step in the criminal proceedings, like a writ of error coram nobis] must be made for the guidance of litigants and court clerks.' Martin v. United States, 10 Cir., 1960, 273 F.2d 775, 777–778." Cited in Brown v. United States, 186 F.Supp. 410, 411 n. 2 (D.Or.1960). The Court of Appeals (in Dillon) says, "Realistically a proceeding which may result in vacating a criminal judgment is, at least, not purely civil." However, it does not even suggest that Dillon is entitled to court-appointed counsel as a matter of right under the Sixth Amendment.

The 1962 Judicial Conference of the Ninth Circuit recognized this fact and problem, with corresponding obligation on the part of the government, when it adopted this resolution:

"WHEREAS, the entire membership of the Judicial Conference for the Ninth Circuit is dedicated to the proposition that all persons charged with the commission of a crime are entitled to a fair trial before a duly constituted court with adequate legal counsel and representation throughout,

"Furthermore, the Conference is of the firm conviction that it is the duty of the public at large, rather than falling upon the legal profession alone, to furnish adequate legal counsel and representation to indigent persons charged with crime; and

"It appearing to the Conference that provisions of law, pursuant to the spirit of the language of S. Bill 2900, would enable the United States Courts and the members of the bar thereof to more ably meet and perform the public duty of supplying such adequate legal counsel and representation;

"NOW, THEREFORE, BE IT RESOLVED by the Conference that the Congress be respectfully urged to forthwith enact legislation pursuant to the spirit of the provisions of S. Bill 2900."

Once again, as it has done for over 25 years, Congress has adjourned without lending aid to the courts by enacting such enabling legislation. Therefore, it would seem that this court must itself do those things that are necessary to do in order to get its business done. The government readily acknowledges that the court reporter is entitled to compensation for his services in preparing transcripts of proceedings for a review. I think the same obligation should run to the legal profession.[4]

It would seem that if there is an obligation for you to serve and if I have the power to enlist your services, voluntarily, albeit, because of your deference and recognized duty to the court, which the Court of Appeals says that I must do, then you must have the corollary right to ask the United States to pay for the reasonable value of your services rendered and the actual expenses which you will incur on behalf of a person seeking relief from an act of government. I say this because I think that in executing the command of the Court of Appeals I am conscripting your services for the benefit of another person to whom, I suggest, the government owes the duty to supply, and taking your property without compensation.[5]

You, Mr. Strayer, and the members of your firm, have always been willing to represent indigent litigants without compensation, but in spite of your generosity, this court feels that you and other members of the bar should not be required to devote your time and lawyer tools, particularly in unusual cases of this kind, without some compensation therefor. So I suggest to you the premise that this court has inherent power to establish a just obligation on the part of the government for compensation and expenses

4. "The idea of one calling enjoying peculiar privileges, and therefore being more honorable than any other, is not congenial to our institutions. And that any class should be paid for their particular services in empty honors is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal right." Webb v. Baird, 6 Ind. 13 (1854).

5. "The attorney and counsellor being, by the solemn judicial act of the court, clothed with his office, does not hold it as a matter of grace and favor. The right which it confers upon him to appear for suitors, and to argue causes, is something more than a mere indulgence, revokable at the pleasure of the court, or at the command of the legislature. *It is a right* of which he can only be deprived by the judgment of the court, * * *." Ex parte Garland, 4 Wall. 333, 379, 18 L. Ed. 366 (1866), approved in Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752; see Konigsberg v. State Bar, 353 U.S. 252, 77 S.Ct. 722.

of court-designated counsel in these proceedings, with the expectancy that the executive department will see that it is enforced.[6] You are invited to make application for such an order upon the completion of your services in this matter.

APPENDIX B
ORDER TO SHOW CAUSE

This matter came on for consideration upon the petition of Manley B. Strayer, Esq., for an order of this Court fixing and directing the payment by the United States of a reasonable amount as compensation for his services and expenses performed herein as court-appointed counsel for the indigent plaintiff.

It appears that on November 13, 1962, this Court, by direction of the United States Court of Appeals for the Ninth Circuit (Dillon v. United States, 307 F.2d 445), entered herein its order whereby said Manley B. Strayer, of the law firm of Hart, Rockwood, Davies, Biggs & Strayer, Portland, Oregon, a member of the bar of the State of Oregon and of this Court, was designated and directed to act as court-appointed counsel in connection with the prosecution of the plaintiff's motion filed in this cause pursuant to Title 28 U.S.C.A. § 2255 for relief from the plaintiff's judgment of conviction entered in the cause then pending in this Court and entitled United States of America, plaintiff, v. Edward J. Dillon, et al., defendants, Crim. No. 18504; and

It further appearing that the said § 2255 proceedings were held and had herein, throughout which Mr. Strayer did act as court-appointed counsel for the plaintiff, to the end and effect that the sentence of imprisonment of the plaintiff in the aforesaid criminal proceedings was set aside and the petitioner held for resentence (Dillon v. United States, 218 F.Supp. 948); and

It being now contended with probable cause that the legal advice and services of Mr. Strayer aforesaid were conscripted and taken by the defendant government for a public use in that legal representation on behalf of the plaintiff had been judicially declared necessary and just as a matter of right on the part of an indigent person seeking relief from an alleged unlawful conviction of a crime and therefore was a public obligation rather than the private obligation of any particular member of the bar (see Proceedings in Open Court, Dillon v. United States, Civil No. 61–349, November 13, 1962 [Appendix A, supra]), and the Court desiring to be further advised in the premises,

It is adjudged and ordered that the Attorney General of the United States appear, by and through The Honorable Sidney I. Lezak, Acting United States Attorney for the District of Oregon, on or before 45 days from the date hereof, to show cause, if any there be, why judgment should not be entered against the United States and in favor of Manley B. Strayer for such amount as may be determined by the Court to be reasonable compensation and fees for his services and expenses performed and incurred as court-appointed counsel herein, and further, why the Director of the Administrative Office of the United States Courts should not be authorized and directed to make payment of said judgment of and from the funds appropriated by Congress and in his hands for the pay-

6. "* * * attorneys cannot be compelled to serve without compensation; and therefore that, in order to conduct a legal trial, the court must have power to appoint counsel, and order that counsel shall be compensated if necessary; and the right to provide compensation cannot be made to depend upon the will of the Legislature." Knox County Council v. State ex rel. McCormick, 217 Ind. 493, 29 N.E.2d 405, 130 A.L.R. 1427 (Ind.1940).

Recent cases on public obligations toward indigent defendants. Transcripts at public expense

Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 cited in Douglas v. California, 372 U.S. 353, 357, 83 S.Ct. 814

Douglas, supra, requires for the indigent legal "representation in the role of an advocate." 372 U.S. p. 357, 83 S.Ct. p. 816.

498

ment of costs and expenses incurred by an indigent criminal defendant in the course of the government's prosecution of a criminal charge against him.

It is further ordered that the Clerk shall forthwith serve this order upon the Attorney General of the United States by forwarding two copies thereof to The Honorable Sidney I. Lezak, Acting United States Attorney, United States Courthouse, Portland, Oregon, via certified United States mail.